Raymond MANNING, Appellant,

v.

The STATE of Texas.

No. 1287–02.

Court of Criminal Appeals of Texas.

Sept. 10, 2003.

that gives no assurance that a valid ground, rather than an invalid one, is actually the basis of the jury's action).

Larry P. Urquhart, Brenham, for Appellant.

Matthew Paul, State's Atty., Austin, Jorge Matos Ortiz, Daniel W. Leedy, Asst. Criminal Dist. Atty's, Bellville, for State.

## OPINION

KEASLER, J., delivered the opinion of the Court in which KELLER, P.J., and WOMACK, HERVEY, and COCHRAN, JJ., joined.

The State charged Raymond Manning with recklessly causing another's death "by the consumption of a controlled substance, ... thereby causing a vehicle to collide with another...." Over Manning's objections, the judge admitted evidence that Manning had .15 mg/l of a cocaine metabolite in his body an hour and a half

after the offense. On appeal, the appellate court held the trial court abused its discretion. We find that the appellate court erred in so holding.

## Facts and Procedural History

Manning was driving his 18–wheeler about 60 miles per hour on Highway 36 just outside of Bellville on a Thursday afternoon in August. He approached a construction site and a line of stopped vehicles, but he did not stop his truck or even slow down. Instead, he slammed full-speed into a stopped Chevy Tahoe. Eight vehicles were involved in the collision and a number of people were injured. Katherine Bonner, the passenger in the Tahoe, was killed.

The State indicted Manning for intoxication manslaughter and manslaughter, but elected to proceed only on the manslaughter count. That count alleged that Manning recklessly caused Bonner's death "by failing to control a motor vehicle or by failing to keep a proper lookout for another motor vehicle, or by driving a motor vehicle without sufficient sleep or by the consumption of a controlled substance, and thereby causing a motor vehicle to collide with another motor vehicle."

At trial the State offered evidence that a cocaine metabolite known as benzoylecgonine had been found in Manning's blood. Manning objected for various reasons, including that it was an "extraneous offense" and that "the prejudicial effects certainly outweigh any probative value." The prosecutor responded that the evidence went to "one of the allegations that we have alleged." The judge overruled Manning's objection.

A witness then testified that Manning's blood contained .15 milligrams per liter of the metabolite. She explained that, when a person ingests cocaine, it metabolizes in the body to benzoylecgonine. Another witness testified that the presence of the metabolite showed only that at some point earlier in time, Manning had ingested cocaine. But at a level of .15 mg/l, Manning would not be feeling any of the effects of cocaine. The witness also testified that only the consumption of cocaine or benzoylecgonine could produce benzoylecgonine in the body.

At the close of evidence that day, Manning requested the judge to reconsider his previous ruling and order the jury to disregard the evidence of the metabolite. The judge denied this request, but in doing so, made the following comments:

> This is a classic problem in that cocaine is in fact a flag for everybody, certainly attracts everybody's attention. I am sure the jury's attention was attracted to that. And certainly public policy is clear, that it dictates that people who operate vehicles should not be consuming alcohol or drugs. On the other hand, if whatever was in his system was not significant enough to have caused any problems in operating a vehicle, then we would be doing an injustice by allowing the jury to assume that, wouldn't we? Certainly, you may not agree with that, but it seems like, I know gauging my own reaction when there was a suggestion that he had cocaine in his system, it made me upset. I am sure the jury felt the same way.

The judge then instructed the parties to "stick to the evidence" during closing arguments, noting that "it would be incorrect to make any inferences about the effects of cocaine beyond what the witness himself testified to."

After both sides closed the following day, Manning again asked the judge to instruct the jury to disregard the testimony and this time also moved for a mistrial. He argued:

... I believe what you have now, Judge, is basically like throwing a skunk into the jury box and then you tell the jury, well, don't smell it and don't think about the smell of the skunk, Judge, because, in this case, ... they had no way that they could ever show that this man was under the influence or that the consumption of controlled substance contributed to this accident.... When it came time to put witnesses on and give them a chance to show that this had any impact whatsoever, or contributed at all to this accident, the very witness that they called indicated, basically, in a nutshell, that it had no impact, that this was basically a trace amount, and they could not show that it had any type of influence on this defendant. The sole reason this is in there is so that they can make this person look bad, because they can hope the jury will believe that at some point in time prior to this accident, he was a bad, bad person and he consumed cocaine.

The judged denied both of Manning's requests.

During closing arguments, the defense mentioned the cocaine evidence, but the prosecutor at most alluded to it. Defense counsel argued:

Consumption of a controlled substance. Throw something smelly into the jury box, and tell them to disregard it. Look, what does the testimony show you? What did I ask the officer, the chemist, who is an expert in those things? I asked him ... did what you find there have any effect on how he acted? His physical or mental ability, how he acted? He said, no. No. Absolutely. He said no. I mean that is as simple as I can put it. He said no. It

had no effect. Are you going to find him guilty because you think maybe he is a bad person? That is fine. You can do that if you want to. That is not what your oath calls for. You base it on the facts. There is absolutely nothing, not one way, shape or form that indicates what was found in his blood had any contribution to this accident whatsoever.

The prosecutor said in his closing that the truck log book would not "show what [Manning] was doing when he was off duty. It doesn't show what he was doing with his body, 50ish year-old man was doing when he is off duty, before he gets in that truck and starts driving." He also mentioned the fact that Manning's blood had been drawn, although he did not mention the results. He merely stated that Manning was awake when he was taken "to the hospital to get the blood drawn," but he fell asleep when his blood was drawn.

The jury convicted Manning of manslaughter and sentenced him to ten years in prison. Manning appealed and argued that the trial court erred in admitting the metabolite evidence because it was irrelevant and because its probative value was substantially outweighed by the danger of unfair prejudice.

The Court of Appeals found the evidence relevant but concluded that its danger of unfair prejudice substantially outweighed its probative value.[1] It therefore found the trial court abused its discretion in admitting the evidence.[2] It also concluded that Manning was harmed by the error and reversed his conviction.[3]

We granted the State's petition for discretionary review to address the appellate

---

1. *Manning v. State,* 84 S.W.3d 15, 21–24 (Tex. App.-Texarkana 2002).

2. *Id.* at 24.

3. *Id.* at 24, 26.

court's Rule 403 analysis and its harm analysis. The concurring opinion concludes that the evidence was irrelevant, but the appellate court found the evidence relevant, and Manning did not petition this Court for review of that holding. Therefore, we do not address that issue.

## Rule 403

Rule 403 provides, in pertinent part, that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." We examined Rule 403 in depth in *Montgomery v. State*,[4] both on original submission and on rehearing. There we explained that the use of the word "may" reflects the draftsman's intent "that the trial judge be given a very substantial discretion in 'balancing' probative value on the one hand and 'unfair prejudice' on the other, and that he should not be reversed simply because an appellate court believes that it would have decided the matter otherwise."[5] We stated that the test for whether the trial court abused its discretion is "whether the act was arbitrary or unreasonable. The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred."[6]

On rehearing, we explained this statement as meaning "that an appellate court should not reverse a trial judge whose ruling was within the zone of reasonable disagreement."[7] We added that "trial courts should favor admission in close cases, in keeping with the presumption of admissibility of relevant evidence."[8] We also set forth factors to be considered in determining whether the trial court abused its discretion under Rule 403, which we recently reiterated in *Mozon v. State*.[9] When an extraneous offense is offered, the court should consider:

- how compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable—a factor which is related to the strength of the evidence presented by the proponent to show the defendant in fact committed the extraneous offense;

- the potential the other offense evidence has to impress the jury "in some irrational but nevertheless indelible way";

- the time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense; and

- the force of the proponent's need for this evidence to prove a fact of consequence, i.e., does the proponent have other probative evidence available to him to help establish this fact, and is this fact related to an issue in dispute.[10]

### *Extraneous offenses*

■■■ The parties disagree as to whether the cocaine metabolite was evidence of an extraneous offense. An extraneous offense is any act of misconduct, whether resulting in prosecution or not, that is not shown in the charging papers.[11] It is an

---

4. 810 S.W.2d 372 (Tex.Crim.App.1991).

5. *Id.* at 379 (op. on orig. subm.).

6. *Id.* at 380.

7. *Id.* at 391 (op. on reh'g).

8. *Id.* at 389.

9. 991 S.W.2d 841, 847 (Tex.Crim.App.1999).

10. *Id.*

11. *Rankin v. State*, 953 S.W.2d 740, 741 (Tex. Crim.App.1996). *See also McDonald v. State*, 692 S.W.2d 169, 173 (Tex.App.-Houston [1st Dist.] 1985, pet. ref'd); *Gomez v. State*, 626

offense that is "extra, beyond, or foreign to the offense for which the party is on trial." [12]

Another way to think of extraneous offenses is in terms of notice. We have explained that one reason extraneous offense evidence is prejudicial is because "the accused has no notice he will be called upon to defend against it." [13] If it is an offense for which the accused had no notice, based on the charging instrument, then it is extraneous.

In this case, the State charged Manning with manslaughter, and the indictment alleged four different manners and means in which that offense could have been committed. One of the allegations was that Manning's recklessness was caused "by the consumption of a controlled substance." So the evidence of a cocaine metabolite in Manning's bloodstream was not an extraneous offense—it was evidence of the charged offense. It is shown in the indictment and Manning had notice that such evidence would be offered.

### Application

■ We now apply the *Montgomery–Mozon* factors to this evidence. The first factor asks how compellingly the evidence serves to make a fact of consequence more or less probable. Here, the "fact of consequence" is whether Manning had consumed a controlled substance. The evidence of the cocaine metabolite in his blood served to make that fact more probable. It was very compelling evidence because the testimony at trial was that noth-

ing but cocaine or benzoylecgonine could produce benzoylecgonine in the body. This was strong evidence showing that Manning did consume cocaine.

The Court of Appeals found the evidence was not compelling because the State did not extrapolate the evidence back to the time of the accident.[14] But as the State points out, the appellate court confused sufficiency with admissibility. The fact that this evidence may not have been sufficient, by itself, to prove that Manning's actions were the result of his ingestion of cocaine does not detract from the fact that the evidence of the metabolite was strong evidence that Manning had consumed cocaine.

■ The second factor is the potential the evidence has to impress the jury in some irrational but nevertheless indelible way. The Court of Appeals concluded the evidence had a "great" potential to impress the jury in this manner.[15] But Rule 403 deals only with the danger of "unfair" prejudice. As we explained in *Montgomery,*

> All evidence introduced against a defendant, if material to an issue in the case, tends to prove guilt, but it is not necessarily prejudicial in any sense that matters to the rules of evidence.... Evidence is prejudicial only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence.... The prejudicial effect may be created by the tendency of the evi-

S.W.2d 113, 114 (Tex.App.-Corpus Christi 1981, pet. ref'd); *Shugart v. State,* 796 S.W.2d 288, 294 (Tex.App.-Beaumont 1990, pet. ref'd).

**12.** *Powell v. State,* —— S.W.3d ——, 2000 Tex. App. LEXIS 3651, No. 12-98-00049, 2000 WL 760988 (Tex.App.-Tyler, delivered May 31, 2000) (op. on reh'g) (not yet reported),

*rev'd on other grounds,* 63 S.W.3d 435 (Tex. Crim.App.2001).

**13.** *Hafdahl v. State,* 805 S.W.2d 396, 402 (Tex.Crim.App.1990).

**14.** *Manning,* 84 S.W.3d at 22.

**15.** *Id.* at 23.

dence to prove some adverse fact not properly in issue or unfairly to excite emotions against the defendant.... [16]

The United States Supreme Court recently echoed this sentiment, noting that "[t]he term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." [17]

Here, the evidence was obviously prejudicial to Manning, but it was not unfairly prejudicial because it pertained to an allegation in the charging instrument. It did not have a great potential to impress the jury in an "irrational" way. Although there was some risk that the jury would convict Manning solely because it believed he was a cocaine user, that risk did not substantially outweigh the probative value of the evidence when the evidence specifically pertained to an allegation in the indictment.

■ The third factor is "the time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense." The Court of Appeals concluded that the time spent on this evidence was "significant," consuming one-fifth of the evidence presented to the jury. [18] While this is true, we again find the appellate court's analysis flawed. Regardless of the length of time spent presenting this evidence, the evidence of the metabolite could not possibly have distracted the jury from the indicted offense because it was proof of the indicted offense.

■ The last factor is "the force of the proponent's need for this evidence to prove a fact of consequence, i.e., does the proponent have other probative evidence available to him to help establish this fact, and is this fact related to an issue in dispute." The Court of Appeals found that whether Manning's consumption of a controlled substance caused him to be reckless was a disputed issue in the case, and the State had no other evidence to establish this fact. [19] We agree. But the appellate court seemed unaware that, as a result, this factor weighs in favor of admissibility, not against it. If the issue is disputed and the proponent has no other evidence to prove the fact, then the proponent's need for the evidence is great, and that weighs in favor of admitting the evidence.

## Conclusion

All four of the *Montgomery–Mozon* factors weigh in favor of admissibility. The Court of Appeals erred in its application of those factors because it erroneously believed that the evidence in this case was extraneous offense evidence. It was not. The trial judge did not abuse his discretion in admitting the metabolite evidence. We sustain the State's first ground for review.

Because of our resolution of the first ground, it is unnecessary to reach the State's second ground. It is dismissed.

## Judgment

We reverse the judgment of the Court of Appeals and remand for that court to consider the remaining points of error.

PRICE, J., filed a concurring opinion in which MEYERS, JOHNSON, and HOLCOMB, JJ., joined.

---

16. *Montgomery*, 810 S.W.2d at 378.

17. *Old Chief v. United States*, 519 U.S. 172, 180, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997).

18. *Manning*, 84 S.W.3d at 23.

19. *Id.* at 23.

PRICE, J., filed a concurring opinion in which MEYERS, JOHNSON, and HOLCOMB, JJ., joined.

I agree with the majority's bottom line, but I disagree with how it arrives there. I believe that the trial court erred by admitting evidence of the existence of cocaine metabolite in the appellant's blood because it was not shown to be relevant. I conclude that the appellant was not harmed by its admission, however.

The evidence of the cocaine metabolite was not relevant even though the indictment alleged, among other means, that the appellant was reckless "by driving a motor vehicle without sufficient sleep or by the consumption of a controlled substance," which caused his truck to collide with another vehicle. The evidence was not relevant because there was no indication when the appellant consumed the cocaine that was metabolized into benzoylecgonine and discovered in the blood test taken at the hospital. The State's evidence was that this metabolite indicated that, some time before the blood test was taken, the appellant had consumed cocaine. But just because he had consumed cocaine at some time before the blood was drawn, does not establish that he was under the influence of cocaine when the collision occurred.

I do not believe that the Court of Appeals confused sufficiency with admissibility. For the evidence to be more probative than prejudicial, the evidence must first be relevant to some fact of consequence in the trial. For the presence of the cocaine metabolite to be relevant, it must be shown that the appellant was under the influence at the time of the collision. Otherwise it is like showing that the appellant had consumed cocaine the day before the collision to prove that he was under the influence when the collision occurred. That evidence would not be admissible in this case to prove the fact of consequence that the

appellant was under the influence of cocaine at the time of the collision. Without some way to connect the metabolite to the appellant's being under the influence at the time of the collision, the evidence was not relevant, and thus, the probative value could not have outweighed the danger of unfair prejudice, which even the trial court acknowledged was a problem.

I agree with the Court of Appeals that the trial court erred in admitting the evidence. That said, I believe that the Court of Appeals erred in concluding that the appellant was harmed by the trial court's error. This is nonconstitutional error, and under Texas Rule of Appellate Procedure 44.2(b), reviewing courts should disregard any error that did not affect the appellant's substantial rights. We have interpreted this to mean that the conviction should not be reversed when, after examining the record as a whole, the reviewing court has a fair assurance that the error did not influence the jury or had but a slight effect. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App.1998).

The evidence at trial that supported conviction of manslaughter by other means charged in the indictment was overwhelming. The alternative means to show recklessness included that the appellant failed to control his vehicle, that he failed to keep a proper lookout for another vehicle, and that he drove without sufficient sleep. The evidence at trial showed that, after passing clearly visible warning signs, the appellant never applied the brakes, slowed down, or swerved as he approached the stopped vehicle in which the victim was riding. The drivers of the cars behind the appellant's truck were able to stop in time and testified that they could see the line of cars stopped ahead on the highway. The State provided evidence that there was nothing mechanically wrong with the brakes on the appellant's truck. The ap-

pellant fell asleep on the way to the hospital and while he was there.

After a review of this record, a reviewing court could easily conclude that there is a fair assurance that the testimony about the cocaine metabolite did not influence the jury or had but a slight effect. I would reverse the Court of Appeals on the harm analysis question. As a result, I concur in the Court's judgment.