MARY'S OPINION HEADING 







                                                                                    NO. 12-03-00382-CR
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
BELINDA KAY TUCKER,                                §                 APPEAL FROM THE 294TH
APPELLANT
 
V.                                                                         §                 JUDICIAL DISTRICT COURT OF

THE STATE OF TEXAS,
APPELLEE                                                        §                 VAN ZANDT COUNTY, TEXAS
                                                                                                                                                            
MEMORANDUM OPINION
            A jury convicted Appellant Belinda Kay Tucker of murder and assessed her punishment at
imprisonment for fifteen years. She presents two issues on appeal. First, she contends the trial court
erred in admitting her statement that she had shot her boyfriend. In her second issue, she complains
the trial court erred in excluding evidence from the victim’s pen packet. We affirm.
 
Background
            Appellant fled her mobile home during a violent argument with Timothy Byram, her live-in
boyfriend. She told her friend (and co-defendant) Donna McCants what had happened. McCants
armed herself with a handgun, and they both returned to Appellant’s mobile home where she lived
with Byram. In trying to enter the house, McCants shot a hole in the door. According to both
women, Byram then burst through the door and started to struggle with both women on the porch. 
McCants fired one more shot without hitting anybody. After Byram had thrown her from the porch,
Appellant took the gun from McCants who was struggling with Byram. She testified that she ducked
her head down and fired. The bullet struck Byram in the back, killing him. Both women had been
drinking before the incident, and Byram had a .15 blood alcohol level at the time of his death.
            Deputy David Arnold arrived at the scene in response to a report of “shots fired at that
location.” Upon his arrival, he saw a pickup truck with its headlights on parked facing the county
road. He observed two women walking toward the truck. As he stopped his patrol car, he saw one
of the women, later identified as Donna McCants, get into the truck. The other woman stood by the
truck. He ordered the woman in the truck to get out. Deputy Arnold saw a pistol on the seat of the
truck so he locked it inside the truck. In response to Deputy Arnold’s inquiry, McCants identified
herself. Arnold recognized Appellant from a previous disturbance call at this location. Arnold then
asked both women “what was going on tonight; what had happened here.” Deputy Arnold told the
jury that Appellant said that she had “shot her boyfriend.”
            Deputy Kevin Mayberry arrived at the scene just as McCants was getting out of the pickup
at Deputy Arnold’s command. At approximately the same time, Deputy Arnold asked the two
women what was going on, Deputy Mayberry told Arnold he could see a person lying on the porch. 
Apparently Appellant had already told Arnold that she had shot Byram before either deputy went to
the porch and found Byram dead, lying face down with a pool of blood in the middle of his back.
Both women were arrested within minutes and taken to the Van Zandt County Jail.
            Appellant was charged with murder, convicted by a jury, and sentenced to imprisonment for
fifteen years.
Admissibility of Statement
            In her first issue, Appellant contends that her statement “I shot my boyfriend” was given in
response to Deputy Arnold’s question about “what happened here.” She argues that Deputy Arnold
asked the question that elicited the statement knowing that shots had been fired, a pistol lay on the
pickup seat, and that someone was lying on the porch. The circumstances, in Appellant’s view,
render her statement the product of custodial interrogation. Because her statement was elicited by
Deputy Arnold without giving Miranda


 and Article 38.22


 warnings, she contends it was
inadmissible at trial and the trial court erred in admitting it.
            Neither Miranda nor Article 38.22 are applicable unless Appellant gave the statement (1)
while in custody and (2) in response to interrogation. The United State Supreme Court defined
custodial interrogation as “questioning initiated by law enforcement officers after a person has been
taken into custody or otherwise deprived of his freedom in any significant way.” California v.
Beheler, 463 U.S. 1121, 1123, 89 S. Ct. 3517, 3519, 77 L. Ed. 2d 1275 (1983). Custody requires
“a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.” 
Id., 463 U.S. at 1125, 89 S. Ct. at 3520. Custody “depends on the objective circumstances of the
interrogation, not on the subjective views harbored by either the interrogating officers or the person
questioned.” Stansbury v. California, 511 U.S. 318, 323, 114 S. Ct. 1526, 1529, 128 L. Ed. 2d 293
(1994).
            The best recent discussion of the subject under Texas law is found in Dowthit v. State, 931
S.W.2d 244 (Tex. Crim. App. 1996). In Dowthit, the court of criminal appeals stated as follows:
 
We have outlined at least four general situations which may constitute custody: (1) when the suspect
is physically deprived of his freedom of action in any significant way, (2) when a law enforcement
officer tells the suspect that he cannot leave, (3) when law enforcement officers create a situation that
would lead a reasonable person to believe that his freedom of movement has been significantly
restricted, and (4) when there is probable cause to arrest and law enforcement officers do not tell the
suspect that he is free to leave. Concerning the first through third situations, Stansbury indicates that
the restriction upon freedom of movement must amount to the degree associated with an arrest as
opposed to an investigative detention. Concerning the fourth situation, Stansbury dictates that the
officers’ knowledge of probable cause be manifested to the suspect.


Id. at 255.
            Appellant was not under formal arrest when she made the challenged statement nor had any
restrictions been placed on her freedom of movement. She was neither a suspect nor the focus of
an investigation. Appellant made the statement to Deputy Arnold at the very outset of his
investigation before he knew a crime had been committed. Since Appellant was not in custody when
she gave the statement, neither Miranda nor Article 38.22 is applicable, and the statement was
admissible. Appellant’s first issue is overruled.
Admissibility of Pen Packet
            In her second issue, Appellant maintains the trial court erred in refusing to allow evidence
from the deceased’s “pen packet” to be used in support of her self defense theory. Byram’s pen
packet shows that his probation granted after a 1988 conviction for delivery of marijuana was
revoked in 1991 for making terroristic threats. The trial court excluded the pen packet evidence
“because its probative value is substantially outweighed by the danger of unfair prejudice or
confusion of the issues or misleading the jury.”
            Appellant testified the decedent was violent and abusive toward her throughout the time they
lived together. She had called the police to their house on several occasions because of his conduct. 
He beat her, chased her with a shotgun, and threatened her with a knife. On the night in question,
he had choked Appellant and hit her windshield with a chair while she was in the truck. She
escaped, she told the jury, only after the intervention of her sons. She testified that she feared for
her own life as well as the life of her friend McCants and that she fired the single shot to protect
herself and her friend from the attack by a 270-pound drunk.
            Because Byram’s “pen packet” shows that his probation granted after his conviction in 1988
for delivery of marijuana was revoked in 1991 for making terroristic threats, Appellant argues that
evidence of Byram’s violent behavior would have supported her plea of self defense in that it tended
to prove both the victim’s violent nature and Appellant’s state of mind. Therefore, she contends the
trial court erred in excluding the evidence under Rule 403.
            Under Rule 403, the trial judge has substantial discretion in balancing probative value against
unfair prejudice, and the trial judge will not be reversed absent an abuse of discretion. Manning v.
State, 114 S.W.3d 922, 926 (Tex. Crim. App. 2003). However, trial courts should favor admission
in close cases in keeping with the presumption of admissibility of relevant evidence. Id. In
determining whether the trial court has abused its discretion in the admission or exclusion of
extraneous offenses, the reviewing court should consider the following factors:
 
              (1) how compellingly the extraneous offense evidence serves to make a fact of consequence
more or less probable–a factor which is related to the strength of the evidence presented by the
proponent to show the defendant in fact committed the extraneous offense;
 
(2) the potential the other offense evidence has to impress the jury “in some irrational but
nevertheless indelible way”;
 
(3) the time the proponent will need to develop the evidence, during which the jury will be
distracted from consideration of the indicted offense; and
 
(4) the force of the proponent’s need for this evidence to prove a fact of consequence, i.e.,
does the proponent have other probative evidence available to him to help establish this fact, and is
this fact related to an issue in dispute.


Id.
            The victim’s convictions were for delivery of marijuana. A drug conviction is not evidence
of a violent nature. The revocation of his probation because of his making terroristic threats is,
however, at least some evidence of his violent character.
            Appellant had only her own testimony to support her self defense theory, and the admission
of Byram’s pen packet would have provided at least some confirmation of Byram’s violent character
and of Appellant’s fear for her life when she fired the fatal shot. However, evidence that Byram had
spent time in prison for any reason would have had the potential to irrationally impress the jury that
he was a bad person generally who probably deserved what he received.
            A trial should exclude such evidence only when there is “a clear disparity between the degree
of prejudice of the offered evidence and its probative value.” Mozon v. State, 991 S. W. 2d 841, 847
(Tex. Crim. App. 1999). In reviewing the trial court’s balancing test determination, the reviewing
court is to reverse the trial court’s judgment “rarely and only after a clear abuse of discretion.” The
trial judge should not be reversed simply because the appellate court believes that it would have
decided the matter otherwise. Montgomery v. State, 810 S.W.2d 372, 379 (Tex. Crim. App. 1991)
(op. on reh’g). Weighing the trial court’s decision against the relevant criteria, we conclude that the
trial court did not abuse its discretion in excluding the challenged evidence.
Conclusion
            The judgment of the trial court is affirmed.
                                                                                                    BILL BASS 
                                                                                                            Justice
Opinion delivered April 29, 2005.
Panel consisted of Worthen, C.J., Griffith, J., and Bass, Retired Justice, Twelfth Court of Appeals, Tyler, sitting by
assignment.




(DO NOT PUBLISH)