IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-0051-05






MICHAEL DEWAYNE POWELL, Appellant



v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE TENTH COURT OF APPEALS


MCLENNAN COUNTY





 Keller, P.J., delivered the opinion of the Court in which MEYERS,
PRICE, WOMACK, KEASLER, HERVEY, HOLCOMB and COCHRAN, JJ., joined. 
JOHNSON, J., concurred in the result.





 In this case, we find that the Court of Appeals failed to give proper deference to a trial court's
ruling under Texas Rule of Evidence 403. Consequently, we reverse the appellate court's judgment.

I. BACKGROUND


A. Trial


 Appellant was charged with evading arrest or detention in a motor vehicle. In an opening
statement made before the State's case-in-chief, defense counsel stated that appellant's defense
would be that he was not the person who evaded detention that day:

What has happened, you will hear, without question, was that this Defendant,
Michael Powell[,] was absolutely in that vehicle, which was not his vehicle, it was
his girlfriend, or whatever. He was in that vehicle earlier, and they were off shopping
earlier in the day, no doubt that Michael Powell was in that vehicle, and no doubt that
his identification is in the vehicle, of course it was. You will hear testimony from
two or three women who were there that night, that after being in the car with
Michael Powell earlier in the evening, another man was asked to drive the car, and
that man was the person driving the car at the time this happened with the police.


* * *



There will be two or three witnesses, as I said, who will testify as to what happened
leading up to that, and why Michael Powell wasn't in the car at that time. It is going
to be our position, and we are going to put on evidence that he was not the one
driving period. 


 The State's evidence at trial showed that Waco Police Officer Charles Spann was on traffic
duty at the intersection of Sixth Street and Bosque Boulevard in Waco. At about 9:30 p.m., he saw
that an approaching white Buick LeSabre did not have its headlights on, and he signaled the driver
to stop. When the driver did so, Officer Spann approached the vehicle. He noticed two people in
the car but was able to get a good look only at the driver, whom he identified as appellant. The
officer then asked appellant for his driver's license and insurance, but appellant replied that he did
not have any insurance. Upon hearing this, Officer Spann asked appellant why he was driving the
car and where he was going. Appellant responded that it was his sister's car and he was taking it
somewhere. At that point, appellant leaned forward and placed his hand on the gearshift. Officer
Spann warned that driving away would be a felony offense. Appellant responded with an expletive
and began to drive off. Officer Spann then entered his own vehicle, turned on the overhead lights
and siren, and began pursuit. 

 At this point, the State approached the bench and requested a hearing outside the presence
of the jury because it wished to offer evidence that was the subject of a motion in limine the trial
judge had granted. The evidence that the State wanted to offer was Officer Spann's testimony about
finding a gun on the ground close to the driver's side door to help establish that appellant had a
motive for fleeing from the officer. After listening carefully to the officer's testimony outside the
presence of the jury and after considering the arguments of opposing counsel, the trial judge
concluded that the testimony was admissible.

 Officer Spann then told the jury that the car stopped a short distance after he began following
it, and the occupants exited the vehicle and fled. As he approached the abandoned car to make sure
no other occupants were inside, Officer Spann noticed a .38 revolver on the ground "four to eight
inches from the open driver's door." He said that he "knew the gun had just been put there, or
recently put there, because they had mowed the grass in Parkside Villages area that day. It was at
night, it was a heavy dew, and there was no dew or moisture on the weapon whatsoever, other than
the bottom part on the grass that it was laying on." The gun was later checked for fingerprints. The
one print that was of comparison quality did not match appellant's fingerprints. 

 After finding the gun and placing it in his squad car, Officer Spann continued to search the
abandoned car. He found appellant's identification card "in the driver's door compartment" and a
ringing cell phone lying on the seat. The officer answered the phone, and the caller asked, "Stevie,
did Little Mike get away or did the police get him?" After Officer Spann completed the initial car
inventory, a police detective at the department conducted follow-up work. The detective determined
that the Buick LaSabre was a rental car leased to appellant's girlfriend. Appellant was later arrested
for the present offense.

 Later in its case-in-chief, outside the jury's presence, the State argued for the admissibility
of testimony that appellant was on parole at the time of the offense. The articulated purpose of this
evidence was to further establish appellant's motive to flee. The conscientious trial judge directed
that the testimony be proffered outside the presence of the jury for his consideration. After hearing
the proffered testimony, the trial judge ruled that the evidence was admissible, but the State decided
to wait until rebuttal to introduce it. 

 During the defense's case-in-chief, appellant called three witnesses, all of whom testified that
a man named Marvin Edwards, not appellant, was the person who drove the vehicle and fled from
Officer Spann. One of them testified that Edwards had "moved out of town, because of some charge
or something that he supposedly got."

 On rebuttal, the State then called a parole officer to testify that appellant was on parole at the
time of the offense and knew that his parole could be revoked for associating with people who carry
firearms. No evidence was introduced regarding what offense was the basis for parole.

 Appellant was convicted and was sentenced to twenty years in prison. (1)

B. Appeal


 In his first two points of error on appeal, appellant contended that the admission of evidence
of the handgun and of his parole status violated Rules of Evidence 404(b) and 403. The Court of
Appeals found the evidence was relevant to a noncharacter purpose under Rule 404(b) because it
tended to show motive, which in turn tended to show the elemental fact of identity, (2) but the court
also found the probative value of the evidence for this purpose to be substantially outweighed by
the danger of unfair prejudice under Rule 403. (3) Consequently, the Court of Appeals held that the
trial court had erred in admitting the evidence. After finding that the error was not harmless, the
court reversed the conviction and remanded the case for a new trial. (4)

 In its Rule 403 analysis, the Court of Appeals evaluated the evidence in light of the four-factor approach originally set forth by this Court in Montgomery v. State: (5) 


 how compellingly the extraneous offense evidence serves to make a fact of
consequence more or less probable;

 the potential the other offense has to impress the jury "in some irrational but
nevertheless indelible way";

 the time the proponent will need to develop the evidence;

 the force of the proponent's need for this evidence to prove a fact of
consequence. (6)



In analyzing the evidence under these factors, the appellate court recognized that the handgun and
the parole evidence were intertwined, (7) and it focused mainly on the prejudicial effects of the handgun
evidence. Regarding the first factor, the Court of Appeals found the State's evidence connecting
appellant to the handgun to be weak. (8) Concerning the second factor, the court said, "Because of the
State's effort to tie the handgun directly to Powell, evidence relating to the handgun had the potential
to influence the jury in an 'irrational but nevertheless indelible way.'" (9) With regard to the third
factor, the appellate court acknowledged that the evidence did not require a significant amount of
time to present. (10) Finally, regarding the fourth factor, the court observed that the State had "other
probative evidence available" to establish appellant's identity as the driver of the car. (11) The Court
of Appeals concluded that a consideration of the evidence in light of these factors established that
"this is one of those 'rare' cases in which the record demonstrates a 'clear abuse of discretion.'" (12)

 With regard to the harm analysis, the Court of Appeals found that identity was a disputed
issue and the State's evidence of identity was not overwhelming:

Powell's counsel pointed out numerous discrepancies between Officer Spann's report 
and his testimony regarding the events Spann observed on the occasion in question.
Powell presented evidence that he was not driving the car on the occasion in question
and an explanation for how his identification card came to be in the car. The State
argued that Powell's parole status proves his motive and thus "puts this defendant
behind the wheel." Although the State offered probative evidence of Powell's
identity, it cannot be characterized as "overwhelming."

 

 Chief Justice Gray dissented, contending that, with regard to the admissibility of the
evidence, the majority had inappropriately substituted its judgment for that of the trial court. (13)

II. ANALYSIS


 Rule 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially
outweighed by the danger of unfair prejudice, confusion of the issues, or misleading
the jury, or by considerations of undue delay, or needless presentation of cumulative
evidence. (14)


We have repeatedly explained that Rule 403's "use of the word 'may' reflects the draftsman's intent
'that the trial judge be given a very substantial discretion in "balancing" probative value on the one
hand and "unfair prejudice" on the other, and that he should not be reversed simply because an
appellate court believes that it would have decided the matter otherwise.'" (15) 

 The Court of Appeals opinion articulates the proper principle of deference. (16) In our view,
however, the opinion nevertheless fails to accord the requisite deference to the trial court in the
weight it gives to the various factors. The Court of Appeals's assessment that the handgun evidence
was only weakly probative of appellant's motive because appellant was only weakly connected to
the handgun overlooks the fact that this type of weakness applied equally to the evidence's
prejudicial effect. Any "bad character" inference associated with the handgun would be
correspondingly attenuated by any uncertainty regarding appellant's connection to that handgun. The 
opinion's assessment that the evidence had the potential "to influence the jury in an irrational but
nevertheless indelible way" is not explained, and support for the proposition is not apparent. And
the court's conclusion that the State did not need the motive evidence because there was other
probative evidence tending to establish appellant's identity as the driver fails to account for the fact
that identity was the only issue in the case and appellant had introduced positive testimony
controverting the issue of identity. In fact, the appellate court's harm analysis shows precisely why
the State did need the evidence because, while the State had other evidence of identity, that evidence
was contested and was not overwhelming.

 A couple of cases from other jurisdictions have addressed the admissibility of evidence of
parole status in the Rule 403 context. In United States v. Cruz, evidence that the defendant was on
parole was introduced to explain why the defendant chose to always utilize intermediaries in illegal
drug transactions. (17) Upholding the admission of this evidence, the Third Circuit explained that
parole status "has been held to be probative of why a defendant would take extra steps to hide his
criminal activity." (18) The court observed that the risk of unfair prejudice was minimized by the fact
that "the jury was never given any hint as to what type of crime" led to the parole status. (19) The court
concluded its discussion with a comment regarding the need for deference to a trial court's Rule 403
rulings:

We have emphasized that the trial judge, not the appellate judge, is in the best
position to assess the extent of the prejudice caused a party by a piece of evidence. 
We have also stated that if judicial self-restraint is ever desirable, it is when a Rule
403 analysis of a trial court is reviewed by an appellate tribunal. (20)


 In State v. Hampton, evidence of an outstanding arrest warrant for a parole violation was
challenged under Oregon's Rule 403, and held to be admissible to show the defendant's motive to
get away from a police officer. (21) In Hampton, no evidence was introduced regarding the crime for
which the defendant was on parole. (22) The Oregon Supreme Court held that the trial court was within
its discretion to admit the evidence. (23) 

 Given that the jury in this case was not informed of the crime for which appellant was on
parole, that the strength or weakness of the handgun's connection to appellant reflected equally on
the issues of probative value and prejudice, and that there was reason to believe that the State had
a significant need for the evidence, we conclude that the trial court was within its discretion to hold
that the probative value of the evidence was not substantially outweighed by the danger of unfair
prejudice. In holding to the contrary, the Court of Appeals failed to properly defer to the trial court's
decision.

 The judgment of the Court of Appeals is reversed, and the case is remanded for consideration
of appellant's remaining point of error.


 Keller, P.J. 

Date delivered: April 5, 2006

Publish

 

 
1. The offense was raised to a third degree felony because he had a previous conviction
for evading arrest and was further raised to a second degree felony due to a punishment stage
enhancement allegation.
2. Powell v. State, 151 S.W.3d 646, 650-651 (Tex. App.-Waco 2004).
3. Id. at 651-652.
4. Id. at 652-653.
5. 810 S.W.2d 372, 389-390 (Tex. Crim. App. 1991)
6. Powell, 151 S.W.3d at 651.
7. Id. at 650.
8. Id. at 651.
9. Id.
10. Id.
11. Id.
12. Id. at 652.
13. Id. at 654-655 (Gray, C.J. dissenting).
14. Tex. R. Evid. 403 (emphasis added).
15. Manning v. State, 114 S.W.3d 922, 926 (Tex. Crim. App. 2003).
16. See Powell, 151 S.W.3d at 650.
17. 326 F.3d 392, 394 (3rd Cir. 2003).
18. Id. at 395.
19. Id. at 396.
20. Id. (internal quotation marks, citations and brackets omitted).
21. 317 Ore. 251, 257-258, 855 P.2d 621, 624-625 (Or. 1993).
22. Id. at 257 n. 10.
23. Id. at 259-260.