NO. 07-10-00249-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

APRIL 5, 2012

_____

NORMA LINDA CARDENAS, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 46TH DISTRICT COURT OF WILBARGER COUNTY;

NO. 11,298; HONORABLE DAN MIKE BIRD, JUDGE

_____

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, Norma Linda Cardenas, appeals her conviction for the offense of murder,[1] and sentence of confinement in the Institutional Division of the Texas Department of Criminal Justice (ID-TDCJ) for a term of life. By one issue, appellant contends the trial court committed reversible error in admitting testimony regarding extraneous offenses. We disagree and will affirm the conviction.

---

[1] See TEX. PENAL CODE ANN. § 19.02(b)(2) (West 2011).

Factual & Procedural Background

On May 30, 2009, Jordan Eli Ramirez, was struck and killed by a Chevrolet Tahoe SUV that belonged to appellant. At the time Ramirez was struck and killed, the vehicle was being driven by David Hamilton and appellant was a passenger in the SUV. Earlier in the evening, appellant had attended a party at Rachel Garcia's house. Ramirez was not in attendance at the party. Later in the evening, appellant and several other individuals left the Garcia home and went to appellant's house with the intention of continuing the party.

When the group arrived at appellant's home, Ramirez came out of the front door and an altercation with appellant erupted. Ramirez struck appellant during this altercation and, after appellant sought refuge in her SUV, Ramirez broke the driver's side window. Eventually, appellant fled from the house. Edgar Morales, who had attended the party at the Garcia home, drove to an Allsups convenience store. After he had been there a short while, appellant's SUV drove up with David Hamilton driving and appellant seated in the front passenger seat. David Hamilton had not attended the party.

Hamilton came over to Morales's vehicle and inquired whether Morales had any weapons with him. Hamilton stated he needed a weapon because appellant asked him to get one in order to "show [Ramirez] how it feels to be beaten by someone else." Morales testified that appellant pointed out Ramirez walking down the street and told Hamilton to go get him. Hamilton pulled the SUV out of the parking lot of Allsups and

2

headed in the direction of Ramirez. Morales followed appellant's SUV out of the Allsups parking lot.

Morales caught up with Ramirez and observed that Ramirez looked scared. Ramirez informed Morales that the SUV had just attempted to run him down. When asked if he wanted a ride home, Ramirez pointed out that he was actually in front of his house. Morales then observed Ramirez go into the house.

Residing in the house was Ramirez's father, Pedro Ramirez. After Ramirez went inside, he stayed a very short period of time before he and his father came back outside and Ramirez went into the street. Fearing his son was going to be involved in a fight with someone, Pedro Ramirez went into the house to grab a baseball bat. As the father came back outside, he heard a vehicle revving up its engine and then the tires digging into the road as the vehicle accelerated rapidly. Pedro Ramirez looked up in time to see the SUV strike his son. The 911 operator was called and EMS came to the scene. Ramirez was taken to the hospital where he was pronounced dead.

All witnesses agreed that the vehicle that struck Ramirez was appellant's SUV. Further, there was no dispute during the trial that Hamilton was driving the SUV at the moment it struck Ramirez. The entire dispute was the role of appellant in the death of Ramirez.

During the opening statement for appellant, trial counsel stated that appellant had no agreement with Hamilton regarding Ramirez. Further, trial counsel said appellant was just a passenger and had no intent to kill Ramirez. This theory of the case continued during the presentation of evidence. During the cross-examination of

3

Morales, trial counsel elicited testimony that appellant never said she wanted to have Ramirez killed or that she even wanted to hurt Ramirez.

As a result of the opening statement of trial counsel and the cross-examination of witnesses, the State concluded that appellant's defense was that she was only a passenger and lacked any intent to harm Ramirez. Accordingly, the State offered the testimony of Marty Leija, the former husband of appellant. The trial court first heard the testimony of Leija out of the presence of the jury. Appellant objected to the testimony under Texas Rule of Evidence 404(b) and 403. See TEX. R. EVID. 403, 404(b).[2] The trial court overruled the objections and Leija was allowed to testify.

Leija testified to events that happened during his marriage with appellant, specifically that appellant would become very angry with him and respond with physical violence. On one occasion, Leija and appellant were arguing and appellant told Leija to leave. When Leija did not leave, she began striking Leija with a baseball bat, and eventually broke a window in his car when he attempted to flee. A second incident involved an argument between the two after both had been drinking. On this occasion, as Leija was walking out of the house, appellant struck Leija in the back of the head with a bottle of rum. Leija's neighbor witnessed the assault and, after Leija had cleaned himself up, invited Leija to his house. While in his neighbor's backyard, Leija was enticed by appellant to jump over the fence and come back to his own house. When Leija jumped the fence, appellant stabbed him in the back with a knife. When the

---

[2] Further reference to Texas Rules of Evidence will be by reference to "Rule ___."

4

court's charge was prepared, the trial court gave a charge that properly limited the use of the extraneous offense evidence.

After hearing the evidence, the jury returned a verdict of guilty. The same jury subsequently sentenced appellant to confinement for life in the ID-TDCJ. Appellant perfected her appeal and brings forth a single issue: that the trial court committed reversible error in allowing the extraneous offense evidence. Appellant's issue is limited to the Rule 403 portion of the trial objection. We disagree with appellant and affirm the conviction.

## Standard of Review

As appellant's issue relates to the trial court's admission of evidence, we review the decision under the abuse of discretion standard. See Billodeau v. State, 277 S.W.3d 34, 39 (Tex.Crim.App. 2009). The test for abuse of discretion is whether the trial court acted without reference to any guiding rules and principles. Montgomery v. State, 810 S.W.2d 372, 380 (Tex.Crim.App. 1990). A reviewing court applying the abuse of discretion standard should not reverse a trial judge's decision whose ruling was within the zone of reasonable disagreement. Green v. State, 934 S.W.2d 92, 102 (Tex.Crim.App. 1996).

## Applicable Law

Once a trial court rules that uncharged misconduct evidence is not barred under Rule 404(b), as occurred in this case, the opponent of the evidence may further object under Rule 403. See Casey v. State, 215 S.W.3d 870, 879 (Tex.Crim.App. 2007). Rule

403 provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."  Rule 403.  "Unfair prejudice does not, of course, mean that the evidence injures the opponent's case -- the central point of offering evidence. Rather it refers to an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."  Garza v. State, No. 07-09-00295-CR, 2011 Tex. App. LEXIS 6480, at *16 (Tex.App.—Amarillo Aug. 15, 2011, pet. ref'd) (mem. op.) (quoting Cohn v. State, 849 S.W.2d 817, 820 (Tex.Crim.App. 1993)).  The use of the word "may" in Rule 403 reflects an intent that the trial judge be given very substantial discretion in balancing probative value and unfair prejudice, and that this determination should not be reversed simply because a reviewing court believes that it would have decided the matter otherwise.  Manning v. State, 114 S.W.3d 922, 926 (Tex.Crim.App. 2003) (citing Montgomery, 810 S.W.2d at 379).

When evidence is objected to under Rule 403, the trial court must balance the probative value of the evidence with the danger of unfair prejudice, but starts with a presumption favoring probative value.  See Feldman v. State, 71 S.W.3d 738, 754-55 (Tex.Crim.App. 2002).  In performing the required balancing, a trial court should consider (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the

6

evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or repeat evidence already admitted. Casey, 215 S.W.3d at 880.

Analysis

Initially, we observe that, from the beginning of the trial, appellant pursued a strategy of contending that she was merely a passenger in the SUV that struck Ramirez. During opening statement, trial counsel stated, "[David] Hamilton was driving. There was no plan. There was no agreement. My client was merely a passenger in the vehicle." Later in the opening statement, trial counsel said, "She had no intent to kill him, no intent to harm him and she wasn't in control of the situation because she was the passenger and David Hamilton was the driver." This strategy placed the issue of her intent squarely before the jury. See Bass v. State, 270 S.W.3d 557, 563 (Tex.Crim.App. 2008). Such is especially true in a situation, such as ours, where the intent of the actor cannot be inferred from the act itself. See Brown v. State, 96 S.W.3d 508, 512 (Tex.App.—Austin 2002, no pet.). Additionally, trial counsel continued to pursue this strategy in his cross-examination of witnesses, especially Morales.

During Morales's direct testimony, he testified that he overheard appellant asking where Ramirez was so that Hamilton could fight him. Morales also testified that, when appellant saw Ramirez walking down the street, appellant told Hamilton to go and get him. During cross-examination of Morales, trial counsel asked if appellant ever specifically said she wanted to kill Ramirez. Trial counsel also inquired as to whether appellant ever specifically said she wanted to hurt Ramirez. From the questioning of

7

this witness on cross-examination, the strategy of appellant was apparent: appellant had no intent to harm, much less kill, Ramirez. Accordingly, her intent was squarely before the jury.

In conducting the Rule 403 analysis, we begin with the inquiry into the inherent probative value of the evidence. See Casey, 215 S.W.3d at 880. "'[P]robative value' refers to the inherent probative force of an item of evidence--that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation--coupled with the proponent's need for that item of evidence." Id. at 879. By trial counsel's trial strategy of attacking the issue of appellant's intent to cause harm to the victim, appellant's prior actions upon becoming angry with her romantic partner became very probative to the jury. Accordingly, this element leans toward resolution of the Rule 403 objection in favor of the State.

The second part of the analysis of probative value requires us to look at the proponent's need for the evidence. Id. at 880. Appellant was charged under a parties theory. Clearly, the evidence proved that David Hamilton was driving the vehicle at the time it struck the victim. Under the parties charge, the State was required to prove that appellant was acting with the intent to promote or assist David Hamilton in the commission of the offense. See TEX. PENAL CODE ANN. § 7.02(a)(2) (West 2011). The intent of appellant at the time of the offense is the key to the charge. This is especially true in these circumstances where the act itself does not infer the intent. See Brown, 96 S.W.3d at 512. The proponent's need for the evidence supports the trial court's ruling.

8

We must next examine the tendency of the evidence to suggest a decision on an improper basis; this is the unfair prejudice prong of the analysis. Casey, 215 S.W.3d at 883 (citing Old Chief v. United States, 519 U.S. 172, 180, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997)). As pointed out earlier, unfair prejudice does not arise from the mere fact that evidence injures a party's case, as that is the central point in offering evidence. See Garza, 2011 Tex. App. LEXIS 6480, at *16. Evidence is unfairly prejudicial when the adverse effect on the opponent goes beyond tending to prove the fact at issue that justifies its admission. Casey, 215 S.W.3d at 883. Appellant's sole argument on this issue is that the evidence of her treatment of Leija left an indelible impression on the jury. Even if that is the case, does the indelible impression allow the jury to make a decision on an emotional or otherwise improper basis as a result of hearing this evidence? We think not, more especially since, from the outset of the trial, the strategy of the appellant was to portray herself as a mere passenger in the vehicle. The evidence at issue went to the heart of appellant's defensive theory. Accordingly, we find that the probative value was not substantially outweighed by the danger of unfair prejudice. See Rule 403.

From a review of the record, it does not appear that the jury was distracted by this evidence nor that the evidence caused any confusion to the jury. The record reveals that the evidence was argued by the State in the context of proving the issue of intent. This was the central issue in the case. Further, the record reveals that the court's charge properly limited the jury's use of the evidence. Finally, a review of the record shows that the time taken up in the presentation of this evidence was something

9

less than 11 pages in the reporter's record as opposed to the total trial testimony of 136 pages.

In the final analysis, the trial court's ruling was within the zone of reasonable disagreement. See Green, 934 S.W.2d at 102. Therefore, in admitting the evidence before the jury, the trial court did not abuse its discretion. See Billodeau, 277 S.W.3d at 39. Accordingly, we overrule appellant's single issue.

## Conclusion

Having overruled appellant's only issue, we affirm the trial court's judgment of conviction.

Mackey K. Hancock
Justice

Do not publish.