# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00280-CR

**Judy Stailey, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 7 OF TRAVIS COUNTY,
### NO. C-1-CR-16-500311, HONORABLE CHUCK MILLER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Judy Stailey guilty of assault causing bodily injury, a Class A misdemeanor. *See* Tex. Penal Code § 22.01(a)(1). The trial court assessed punishment at sixty days' confinement and a $4,000 fine, but suspended imposition of this sentence and placed Stailey on community supervision for two years. On appeal, Stailey challenges the trial court's admission of a voicemail recording over her Rule 403 objection. We will affirm the trial court's judgment.

## Background

The State alleged that Stailey caused bodily injury to Jamie Oliver by throwing a wine glass at Oliver, hitting her on the arm and causing a cut on her wrist. At trial, Oliver testified that she and Stailey were standing near each other at a hotel bar when Oliver felt something wet on her arm, felt a sharp pain on her wrist, and saw a wine glass falling to the ground. Oliver also testified that she then heard Stailey claim something along the lines of "I did it. I did that, it was me." Oliver

admitted on cross-examination, however, that she did not actually see Stailey throw the wine glass at her.

A friend of Stailey's who was at the hotel bar that night testified that Stailey usually drank wine and that, although she did not see Stailey throw the wine glass, she believed Stailey did throw the wine glass based on Stailey's "bad history" with Oliver. Stailey's friend also testified that even though she was close enough to Stailey to hear anything she might have said after the incident, she did not hear Stailey say anything after the wine glass had been thrown.

A hotel security guard testified that he saw Stailey holding a wine glass on the night of the incident and saw Stailey holding her middle finger in the air after the incident. He also testified that Stailey told him that she and Oliver had "some kind of disagreement" in the past and that she admitted she had thrown the glass at Oliver. On cross-examination, the security guard admitted that he had not seen Stailey throw the glass at Oliver.

Another witness called by the defense testified that he was a friend of Stailey's and was at the hotel bar on the night of the incident. He testified that he did not see Stailey holding a drink, giving anyone "the finger," or talking to any security guards, but then on cross-examination, he admitted that he did not know if he was at the bar at the time the incident occurred.

The State offered into evidence a voicemail message that Stailey had left on the phone of Bob Gomes, a mutual friend of Stailey and Oliver, a few days before the alleged incident. In the voicemail message, Stailey stated:

> Hi Bob, it's Judy. Last night I was out with Trish, and Bill was at the, uh, bar so I
> stopped to say hi to him. And we were talking for a while, joking and talking, and
> he said, "Hey, Jaime Oliver's right behind me," and I didn't notice, and then I was

2

like, "Oh, okay." He said, "What is her deal?" This is what he said, he said, "She's so sour, I don't like her," and I'm like, "Yeah, you get that too, I just don't like her either, I just don't care for her personality. She has none. She's like really, um, she's sour." So, he and I had our conversation. I went back over to the table. Then she goes over there to him, referring to me: "Oh, I'm invisible," and then she said some other things but she didn't know that he doesn't like her either. So, you tell her next time I see her out I'm gonna slap the fucking shit out of her. I'm tired of it. I'm not . . . I don't . . . I'm not with you and I'm not sleeping with you. I have nothing to do with you. I'm gonna slap the fucking shit out of her. And you know what? She's not gonna like it. So you better just tell your friend to stay away from me 'cause next time I hear a smart remark, and I'm probably gonna do it anyway, I'm gonna slap the shit out of her. Call me [garbled].

Stailey objected to the admission of the voicemail message, arguing that its probative value was substantially outweighed by its unfairly prejudicial effect. The trial court overruled the objection and admitted the voicemail message.

After hearing this and other evidence, the jury found Stailey guilty of assault causing bodily injury. The trial court later assessed punishment, and this appeal followed.

**Discussion**

On appeal, Stailey contends that the trial court erred in admitting the voicemail because the vulgar language in which the threat was framed posed a danger of unfair prejudice that substantially outweighed the voicemail's probative value. *See* Tex. R. Evid. 403 (allowing trial court to exclude relevant evidence if "its probative value is substantially outweighed by," among other considerations not at issue in this appeal, "unfair prejudice"). More specifically, Stailey asserts that, even though there is other evidence in the record that supports her conviction, the graphic nature of the voicemail threats likely induced the jury to decide the case based on emotion.

3

We review a trial court's ruling regarding the admission or exclusion of evidence for an abuse of discretion. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). Under that standard, a trial court's ruling will only be deemed an abuse of discretion if it is so clearly wrong as to lie outside "the zone of reasonable disagreement," *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002), or is "arbitrary or unreasonable," *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). Moreover, the ruling will be upheld provided that the trial court's decision "is reasonably supported by the record and is correct under any theory of law applicable to the case." *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005).

Once a Rule 403 objection is asserted, the trial court must engage in the balancing test that weighs "(1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted." *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).

Stailey acknowledges that the voicemail message at issue here has "inherent probative value," but she contends that the State did not "need . . . that evidence" in this case because it had other evidence to establish the identity of the person throwing the glass at Oliver and that person's motive for doing so. Specifically, Stailey argues that the State did not need the voicemail message because:

4

- Oliver and a security guard testified that Stailey had admitted to throwing the glass at Oliver;

- Stailey's own friend testified that Stailey was in a position to throw the glass and that the friend believed Stailey had done so based on the "bad blood" between Stailey and Oliver; and

- a detective testified that he believed Oliver's testimony and, further, that Stailey had not denied throwing the glass when the detective spoke with her.

In sum, Stailey argues, the first two *Gigliobianco* considerations weigh against the admission of the evidence.

Regarding the remaining *Gigliobianco* considerations, Stailey maintains that only the one regarding unfair prejudice—i.e., whether the voicemail had any tendency to suggest a decision on an improper basis—is relevant in this case. Stailey argues that the voicemail is unfairly prejudicial because it has "a tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional basis." *Gigliobianco*, 210 S.W.3d at 641. More specifically, Stailey contends that the voicemail is unfairly prejudicial because "it arouses the jury's hostility or sympathy for one side without regard to the logical or probative force of the evidence," *see id.*, and it possibly "lure[d] the factfinder into declaring guilt on a ground different from proof specific to the offense charged," *see Manning v. State*, 114 S.W.3d 922, 928 (Tex. Crim. App. 2003). We disagree.

As Stailey acknowledges, it was reasonable for the trial court to conclude that the inherent probative force of the voicemail message was considerable given that the identity and motivation of the assailant was at issue in the case, that the voicemail shows Stailey was angry with Oliver based on previous encounters, and that she contemplated assaulting Oliver without any provocation, showing intent. Relatedly, the trial court in this case could have reasonably concluded that the State's need for the voicemail message was considerable since none of the witnesses

5

could testify that they saw Stailey throw the wine glass, but only about her actions immediately before and after the incident. Stailey argues that the compelling nature of the evidence against her—specifically, the circumstantial evidence and her alleged admissions—rob the voicemail of its probative value. However, the focus of our review is whether the trial court could have reasonably concluded that the State needed the evidence for identification purposes. We are persuaded that the trial court could have reached that reasonable conclusion.

Finally, the trial court could have reasonably concluded that the voicemail did not have a tendency to suggest a decision on an improper basis. Although Stailey used vulgar language in the voicemail, the trial court could have reasonably concluded that the vulgar language was not so inflammatory or out of the norm as to lead the jury to convict her on an improper basis.

### Conclusion

On this record, we cannot conclude that Stailey met her burden of showing that the district court abused its discretion by overruling her Rule 403 objection. Having overruled Stailey's sole issue, we affirm the trial court's judgment of conviction.

_____
Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Goodwin and Field

Affirmed

Filed: August 1, 2018

Do Not Publish