COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                       NOS.
2-06-407-CR

        2-06-408-CR

 

EVERETT
CHARLES HINSON                                                  APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

 

I. 
Introduction

 








Appellant
Everett Charles Hinson appeals his convictions for sexual assault of a child
and aggravated sexual assault of a child. 
In three points, Hinson argues that the evidence is legally and
factually insufficient to support his convictions and that the trial court
abused its discretion by overruling his rule 403 objection and admitting
certain testimony that was more prejudicial than probative.  We will affirm.

II.  Factual
and Procedural Background

Hinson
was the pastor of a church attended by Lisa R., her children, and two of Lisa=s
sisters, who lived with Lisa at the time. 
They attended Hinson=s church
from 1998 until 2002.  In late 2002, Lisa
caught Hinson at her house uninvited. 
Hinson and Lisa=s thirteen-year-old daughter,
M.W., were watching an R-rated movie about a sexual relationship between a
young girl and an older man.  Lisa
confronted Hinson about the incident and soon thereafter left the church.  

Two
years later, in 2004, Lisa noticed that M.W. was aggressive and withdrawn.  In an attempt to discover the source of the
change, Lisa rummaged through M.W.=s room
and discovered a letter that M.W. had written to a friend.  In this letter, M.W. alleged that her former
pastor had sexually molested her.  Lisa
confronted M.W. with the letter and asked if Hinson had ever molested her.  M.W. confessed that Hinson had molested her
several times while they attended his church.  








After
discovering M.W.=s letter, Lisa called her
youngest sister, R.W., who had lived with Lisa and her children when R.W. was
between the ages of twelve and sixteen. 
During that phone call, R.W. stated that Hinson had similarly molested her
when she had lived with Lisa. 

The State
tried Hinson on two counts of sexual assault of a child and three counts of
aggravated sexual assault of a child. 
After a trial, the jury found Hinson guilty of two offensesCone
count of sexual assault of a child and one count of aggravated sexual assault
of a childCand the trial court sentenced
Hinson to confinement for fifteen and forty years, respectively.  This appeal followed.

III.  Legally
and Factually Sufficient Evidence

In his
first and second points, Hinson argues that the evidence is legally and
factually insufficient to support the verdict. 
Specifically, Hinson contends that the State failed to prove that Hinson
actually committed the alleged offenses. 


A.     Legal Sufficiency Standard of Review

In
reviewing the legal sufficiency of the evidence to support a conviction, we
view all the evidence in the light most favorable to the prosecution in order
to determine whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,
319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235 S.W.3d 772, 778
(Tex. Crim. App. 2007).








This
standard gives full play to the responsibility of the trier of fact to resolve
conflicts in the testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts. 
Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Clayton, 235
S.W.3d at 778.  The trier of fact is the
sole judge of the weight and credibility of the evidence.  See
Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Margraves v.
State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).  Thus, when performing a legal sufficiency
review, we may not re-evaluate the weight and credibility of the evidence and
substitute our judgment for that of the fact-finder.  Dewberry v. State, 4 S.W.3d 735, 740
(Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000).  Instead, we Adetermine
whether the necessary inferences are reasonable based upon the combined and
cumulative force of all the evidence when viewed in the light most favorable to
the verdict.@ 
Hooper v. State, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007).  We must presume that the fact-finder resolved
any conflicting inferences in favor of the prosecution and defer to that
resolution.  Jackson, 443 U.S. at
326, 99 S. Ct. at 2793; Clayton, 235 S.W.3d at 778.

B.     Factual Sufficiency Standard of Review








When
reviewing the factual sufficiency of the evidence to support a conviction, we
view all the evidence in a neutral light, favoring neither party.  Watson v. State, 204 S.W.3d 404, 414
(Tex. Crim. App. 2006); Drichas v. State, 175 S.W.3d 795, 799 (Tex.
Crim. App. 2005).  We then ask whether
the evidence supporting the conviction, although legally sufficient, is
nevertheless so weak that the fact-finder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
fact-finder=s determination is manifestly
unjust.  Watson, 204 S.W.3d at
414-15, 417; Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App.
2000).  To reverse under the second
ground, we must determine, with some objective basis in the record, that the
great weight and preponderance of all the evidence, though legally sufficient,
contradicts the verdict.  Watson,
204 S.W.3d at 417.








In
determining whether the evidence is factually insufficient to support a
conviction that is nevertheless supported by legally sufficient evidence, it is
not enough that this court Aharbor a
subjective level of reasonable doubt to overturn [the] conviction.@  Id. 
We cannot conclude that a conviction is clearly wrong or manifestly
unjust simply because we would have decided differently than the jury or
because we disagree with the jury=s
resolution of a conflict in the evidence. 
Id.  We may not simply
substitute our judgment for the fact-finder=s.  Johnson, 23 S.W.3d at 12; Cain v.
State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  Unless the record clearly reveals that a
different result is appropriate, we must defer to the jury=s
determination of the weight to be given contradictory testimonial evidence
because resolution of the conflict Aoften
turns on an evaluation of credibility and demeanor, and those jurors were in
attendance when the testimony was delivered.@  Johnson, 23 S.W.3d at 8.  Thus, we must give due deference to the
fact-finder=s determinations, Aparticularly
those determinations concerning the weight and credibility of the evidence.@  Id. at 9.

An
opinion addressing factual sufficiency must include a discussion of the most
important and relevant evidence that supports the appellant=s
complaint on appeal.  Sims v. State,
99 S.W.3d 600, 603 (Tex. Crim. App. 2003). 
Moreover, an opinion reversing and remanding on factual insufficiency
grounds must detail all the evidence and clearly state why the finding in
question is factually insufficient and under which ground.  Goodman v. State, 66 S.W.3d 283, 287
(Tex. Crim. App. 2001); Johnson, 23 S.W.3d at 7.

C.     Analysis of the Evidence Presented

Hinson
claims that the evidence failed to show that he actually committed the offenses
against M.W. and R.W.  He contends that
the State=s failure to present any medical
testimony establishing that he sexually assaulted the two girls and the lack of
physical evidence of sexual assault on either of the girls made the evidence so
weak that the jury should have had a reasonable doubt as to whether he
committed the offenses. 








The
testimony of a child sexual abuse victim alone is sufficient to support a
conviction for aggravated sexual assault. Tex.
Code Crim. Proc. Ann. art. 38.07 (Vernon 2005); see Garcia v. State,
563 S.W.2d 925, 928 (Tex. Crim. App. 1978). 
Courts give wide latitude to testimony given by a child victim of sexual
abuse.  See Villalon v. State, 791
S.W.2d 130, 134 (Tex. Crim. App. 1990). 
There is no requirement that the victim=s
testimony be corroborated by medical or physical evidence.  Garcia, 563 S.W.2d at 928; Kemple
v. State, 725 S.W.2d 483, 485 (Tex. App.CCorpus
Christi 1987, no pet.); Kirsch v. State, No. 02-06-00031-CR, 2007 WL
704905, at *3 (Tex. App.CFort Worth Mar. 8, 2007, pet.
ref=d) (mem.
op.) (not designated for publication).

To
convict Hinson of sexual assault of a child as alleged in the indictment, the
State was required to prove that Hinson intentionally or knowingly caused his
mouth to touch the sexual organ of R.W.  See
Tex. Penal Code Ann. '
22.011(2)(C) (Vernon Supp. 2007). 
Furthermore, to convict Hinson of aggravated sexual assault as alleged
in the indictment, the State was required to prove that Hinson intentionally or
knowingly caused the penetration of M.W.=s sexual
organ by any means.  See id. '
22.021(B)(i).








At
trial, R.W. testified that in the summer of 2001, when she was fifteen years
old, Hinson came over to her house when Lisa, her older sister, was at
work.  M.W. and M.W.=s
younger brother were sleeping, and R.W. was taking a shower.  R.W. testified that Hinson came in the house,
went into the bathroom where R.W. was showering, ordered her to turn around so
that her front was facing him, and penetrated her sexual organ with his tongue.  

M.W.
additionally testified about Hinson=s sexual
molestation of her.  Specifically, M.W.
testified that after R.W. moved out, there were several occasions when Hinson
would come over to M.W.=s house while M.W.=s mother
was at work, would order her younger brother outside, crawl into bed with her,
and put his finger inside her sexual organ. 
M.W. additionally testified that, on one occasion, Hinson picked her up
from school, took her to a hotel, and again put his finger inside her sexual
organ.[2]  M.W.=s
younger brother verified that Hinson came to their house when their mother was
not present, ordered him to go outside, and told him not to tell his mother
that Hinson had stopped by.  On one
occasion, the brother testified that he attempted to come back inside to get a
drink and that Hinson would not allow him back into the house. 








The jury
also heard from Lisa that, although she had given Hinson=s wife a
key to the house in case of an emergency, Hinson was never invited to go to her
house unattended.  Lisa also recounted an
instance when she came home unexpectedly and caught Hinson on his way into the
house at a time when the children were there alone.  Hinson, according to Lisa, acted startled,
jumped back into his vehicle, and, after a brief conversation, hurriedly left. 

The
State additionally presented the testimony of a lady whose husband went to Lisa=s house,
at Lisa=s
request, to install a security system. 
The wife, who was with her husband at the time, testified that, while
they were installing the security system, they opened the garage door to the
house and discovered Hinson=s
vehicle parked in the garage (they also attended Hinson=s church
and knew what his vehicle looked like). 
R.W., M.W., and M.W.=s
younger brother explained that Hinson had again come over to the house and had
hidden in a back room when the security installation people arrived because he
did not want them to discover him.  The
jury also heard the testimony of one of R.W.=s
friends who said that Hinson was at the house when Lisa was not there and that
Hinson asked the friend not to tell anyone that he had been there. 








In his
defense, Hinson elicited testimony from M.W. that she had spoken with a CPS
worker approximately one year before her mother had discovered the letter she
had written and, in response to the CPS worker=s
questions, said that Hinson had never touched her.  M.W. explained that she was scared and did
not want to recount in court what Hinson had done to her.  Also in his defense, Hinson presented his
wife=s
testimony that R.W., M.W., and M.W.=s
younger brother were afraid of their mother, Lisa, and that Lisa had put the
children up to testifying against Hinson as a way to get back at the Hinsons
for the dispute causing Lisa=s
departure from the church two years earlier. 

In
evaluating all of this evidence, the testimony of R.W. and M.W. alone was
sufficient to support Hinson=s
convictions.  See Tex. Code Crim. Proc. Ann. art. 38.07; Garcia,
563 S.W.2d at 928 (stating that the victim=s
testimony, standing alone, was sufficient evidence of penetration).  Furthermore, contrary to Hinson=s
assertions, the girls= testimony did not need
corroboration by medical or physical evidence. 
See Kemple, 725 S.W.2d at 485; Kirsch, 2007 WL 704905, at
*3.  R.W=s and
M.W.=s
testimony was, however, factually corroborated by M.W.=s
younger brother, Lisa, R.W.=s
friend, and one of the security system installation people, all of whom
indicated that Hinson was going to Lisa=s house
uninvited, at a time when only the children were home; ensuring that he was
alone with either R.W. or M.W.; and trying to keep his visits a secret.








Therefore,
viewing all the evidence in the light most favorable to the verdict, we hold
that a rational trier of fact could have found beyond a reasonable doubt that
Hinson committed the alleged crimesCintentionally
or knowingly causing the sexual organ of R.W. to contact Hinson=s mouth
and causing the penetration of M.W.=s sexual
organ by inserting his finger.  See
Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Hampton v. State
165 S.W.3d 691, 693 (Tex. Crim. App. 2005); Kirsch, 2007 WL 704905, at
*4 (holding that a child=s testimony constituted legally
sufficient evidence to support aggravated sexual assault of a child
conviction).  Viewing all of the evidence
in a neutral light that favors neither party, we hold that the evidence
supporting the conviction is not so weak that the fact-finder=s
determination is clearly wrong and that the conflicting evidence does not so
greatly outweigh the evidence supporting the conviction that the fact-finder=s
determination is manifestly unjust.  See
Watson, 204 S.W.3d at 414-15, 417; Drichas, 175 S.W.3d at 799; Johnson,
23 S.W.3d at 11; Kirsch, 2007 WL 704905, at *3 (holding a child=s
testimony factually sufficient to support an aggravated sexual assault of a
child conviction).

Thus, we
hold that the evidence is legally and factually sufficient to support Hinson=s
convictions for sexual assault of a child and aggravated sexual assault of a
child.  We overrule Hinson=s first
and second points.

 

 








IV. 
Prejudicial Evidence

In his
third point, Hinson complains that the trial court abused its discretion by
admitting testimony from Lisa in violation of Texas Rule of Evidence 403.  

A.     Standard of Review

The
admissibility of evidence is within the discretion of the trial court and will
not be overturned absent an abuse of discretion.  Moses v. State, 105 S.W.3d 622, 627
(Tex. Crim. App. 2003).  As long as the
trial court=s ruling was within the zone of
reasonable disagreement, the appellate court should affirm.  Id.; Montgomery v. State, 810
S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh=g). The
trial court=s decision must be reasonable in
view of all the relevant facts.  Santellan
v. State, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997).  The mere fact that a trial court may decide a
matter within its discretionary authority in a different manner than an
appellate court would in a similar circumstance does not demonstrate that an
abuse of discretion has occurred.  Manning
v. State, 114 S.W.3d 922, 926 (Tex. Crim. App. 2003); Mata v. State,
No. 02-05-00432-CR, 2007 WL 1649892, at *6 (Tex. App.CFort
Worth June 7, 2007, pet. ref=d) (mem.
op.) (not designated for publication).

 








B.     Rule 403

Evidence
is relevant when it has a tendency to make the existence of any fact more
probable or less probable than it would have been without the evidence.  Tex.
R. Evid. 401.  Rule 403 allows for
the exclusion of otherwise relevant evidence when its probative value is
substantially outweighed by the danger of unfair prejudice.  Tex.
R. Evid. 403; Shuffield v. State, 189 S.W.3d 782, 787 (Tex. Crim.
App.), cert. denied, 127 S. Ct. 664 (2006).  The trial court is in a superior position to
gauge the impact of relevant evidence in making its determination under rule
403.  See Mozon v. State, 991
S.W.2d 841, 847 (Tex. Crim. App. 1999); Mata, 2007 WL 1649892, at *6.

Rule 403
favors the admission of relevant evidence and carries a presumption that
relevant evidence will be more probative than prejudicial.  Shuffield, 189 S.W.3d at 787.  Factors that should go into an analysis under
rule 403 include how probative the evidence is; the potential of the evidence
to impress the jury in some irrational but nevertheless indelible way; the time
the proponent will need to develop the evidence; and the proponent=s need
for the evidence to prove a fact of consequence, i.e., does the proponent have
other probative evidence available to help establish this fact and is this fact
related to an issue in dispute.  Santellan,
939 S.W.2d at 169; Mata, 2007 WL 1649892, at *6.








C.     Application

During
trial, after Lisa had finished testifying about walking in on Hinson and M.W.
watching an inappropriate movie and how she had confronted Hinson about the
incident, she discussed how, immediately following this confrontation, she was
kicked out of the church.  Lisa said that
on the following Sunday after church, Hinson=s
secretary asked Lisa to go to Hinson=s
office.  At this point, the State=s
attorney asked to approach the bench and told the trial court and Hinson=s
attorney that she was about to elicit testimony from Lisa that Hinson had told
her, during this meeting, to commit suicide. 
Hinson=s attorney objected that the
testimony was not relevant and that it would violate rule 403.[3]  The trial court performed a balancing test
and determined that the testimony was Amore
probative than it is prejudicial and since it is more probative on the
balancing test we should put it in.@  








After
the trial court=s ruling, Lisa testified before
the jury that Hinson and his wife were waiting for her in Hinson=s office
and that they told her that they were going to take away her children, her
house, her business, and her car if she did not sign some papers that they had
drawn up.  When she refused, she said
that Hinson Aasked me to shoot myself in the
head with my mother=s gun.@  Then, Hinson=s wife
told her not to come to church anymoreCthat she
and her family were excommunicated.  








The
disputed statement was probative of Hinson=s state
of mind and consciousness of guilt.  Accord
Roberts v. State, 795 S.W.2d 842, 845 (Tex. App.CBeaumont
1990, no pet.) (stating that attempts by defendant to suppress testimony of a
witness is generally admissible as conduct showing consciousness of guilt
tending to prove commission of the act charged).  Such a statement, therefore, made it more probable
that Lisa had caught Hinson doing something wrong and that Hinson, knowing that
he had been caught, threatened Lisa and tried to use his sway over her as her
pastor to convince her to commit suicide. 
Accord id. at 844-45 (stating that defendant=s letterCthreatening
the victim of aggravated sexual assault with incarceration for bigamy and tax
evasion if she did not get the district attorney to drop charges against himCwas an
attempt to suppress testimony of a witness). 
Although this testimony was somewhat inflammatory, it was not so
inflammatory that it would have impressed the jury in some irrational, yet
indelible way.  Any inflammatory effect
was outweighed by the statement=s
probative value in establishing that Hinson did, in fact, commit the offenses
at issue and was attempting to cover up the offenses after Lisa became
suspicious of his behavior.  Accord
id. at 845 (holding that vulgar allegations in letter that appellant
complained of were expressions of threat to the complainant and thus had
probative value); Torres v. State, 794 S.W.2d 596, 598, 600 (Tex. App.CAustin
1990, no pet.) (holding that appellant=s phone
calls from jailCin which he threatened his wife
with going to jail and taking away her military benefits if she did not drop
the charges against him for sexually assaulting her childCwere
admissible because their probative value substantially outweighed any unfair
prejudice).

Therefore,
starting from the presumption that this relevant evidence was more probative
than prejudicial and viewing all of the relevant facts, we cannot say that the
trial court acted outside the zone of reasonable disagreement by allowing Lisa=s
testimony.  See Shuffield, 189
S.W.3d at 787; Moses, 105 S.W.3d at 627. 
Accordingly, we overrule Hinson=s third
point.

V.  Conclusion

Having
overruled all three of Hinson=s
points, we affirm the trial court=s
judgment.

 

SUE WALKER

JUSTICE    

 

PANEL B:   DAUPHINOT, HOLMAN, and WALKER, JJ.

 

DO NOT PUBLISH

Tex. R. App.
P. 47.2(b)

 

DELIVERED: January 24, 2008











[1]See Tex.
R. App. P.
47.4.





[2]Both R.W. and M.W. gave
explicit testimony about approximately ten separate occasions on which Hinson
allegedly, in some form, sexually molested them.  However, because the jury found Hinson guilty
only on the charges alleging violations of penal code sections 22.011(2)(C) and
22.021(B)(i) as set forth in the indictment, we will discuss the facts relating
only to those offenses.





[3]Hinson does not dispute
the relevance of the testimony on appeal.