**Affirmed; Opinion Filed July 19, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-16-01180-CR**

**No. 05-16-01181-CR**

**ZACHARY ELLIOT CALLENS, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 219th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause Nos. 219-82261-2015 & 219-82262-2015**

## MEMORANDUM OPINION

Before Justices Lang, Myers, and Stoddart
Opinion by Justice Myers

A jury convicted appellant Zachary Elliot Callens of two counts of murder and assessed

punishment in each case at life imprisonment and a $10,000 fine. In two issues, appellant contends

(1) the trial court abused its discretion when evidence of his relationships with his peers was

improperly presented to the jury during guilt-innocence; and (2) the trial court abused its discretion

when "numerous photographs" were allowed into evidence "specifically for their prejudicial

purpose." We affirm.

### BACKGROUND

The evidence at trial showed that appellant shot and killed his parents, Maria and Ryan

Callens. Appellant, sixteen years old at the time of the murders,[1] was the youngest of five children. He lived at home with his parents, his sister Sydney, and his brother Scott.

On August 11, 2014, at around 2:05 a.m., Frisco police officers responded to a 911 call of "shots fired" at the 12000 block of Shepard's Hill Lane in Frisco, Texas. When the police arrived, appellant and Sydney were standing in the front yard. She was grief-stricken but appellant appeared calm and nonchalant. He was kneeling, bent down, and he had his hands in his hair. Appellant told Sydney he killed their parents and that he had planned it. Overhearing their exchange, one of the responding officers asked where the murder weapon was located, and appellant told him it was "right in front when you walk in." The officer took appellant into custody, handcuffing him and placing him in his patrol vehicle.

Inside the home, the police found a .22 caliber long rifle with a flashlight duct taped to it laying on the floor near the body of appellant's father, Ryan Callens, Sr., who was on the floor just outside of the entrance to the master bedroom. He was dead, with gunshot wounds to the chin and the head. According to the medical examiner, he died almost instantly. Appellant's mother, Maria Callens, was laying on her right side on the bed in the master bedroom. She had been shot seven times and was still breathing when police found her, but she died before paramedics arrived.

Prior to calling 911, Sydney had heard multiple "pops" and heard her mother screaming, followed by silence. She got out of bed and walked out of her room, and heard appellant scream "no Morpheus" at the dog. Turning on the hallway light, Sydney saw appellant come up the stairs and remove and toss aside a pair of ear protectors that were later found in the stairwell. Appellant passed Sydney and ran to his room. She followed appellant to his room, where he was curled up in a ball on his bed, telling Sydney not to go downstairs and to just to call 911. She went to her

---

[1] Appellant was certified to stand trial as an adult.

brother Scott's room and, not finding him there,[2] went down the stairs, where she found her father's body and then called 911.

The murder weapon belonged to appellant's father, who had recently inherited it from his father and kept it for sentimental reasons. Police found nine fired cartridge casings, eight unfired cartridges, and eight projectiles or projectile fragments at the crime scene. All of the casings, cartridges, and projectiles were .22 caliber. The cartridge casings were linked to the rifle, as were the two projectiles removed from Maria Callens's body. The unfired cartridges had no markings on them, and the remaining fragments were too damaged to link to any weapon.

Police also found a roll of duct tape, a box of .22 ammunition, and used practice paper targets in appellant's room. A forensic criminalist matched the torn ends of the tape wound around the flashlight and rifle barrel to the roll of duct tape found in appellant's bedroom. Another criminalist found ten of appellant's fingerprints on the side of the roll of tape, and a DNA analyst found appellant's DNA on the ear protectors, the sides of the roll of tape, and the power button on the flashlight. A trace evidence examiner found gunshot residue on the hands of appellant, his parents, and on Sydney. Appellant and his father had the greatest amount of residue; they each had five particles on one hand and two on the other.

The evidence showed appellant was upset with his parents about being forced to go back to public school after having been home-schooled for years. Appellant did not want to go to public school and wanted to quit school and devote his time to becoming an artist. He also argued with his father over assigned chores, like yard work.

**DISCUSSION**

### I. Admissibility of Sydney's Trial Testimony

In his first issue, appellant contends the trial court abused its discretion and he was harmed

---

[2] Scott was not at home, spending the night at an ex-girlfriend's house.

when evidence of his relationships with his peers was improperly presented to the jury during guilt-innocence. Appellant argues the trial court abused its discretion in admitting testimony from his sister Sydney that he "had some friends" and "was able to play with friends or hang out with friends. . . but . . . he wouldn't go hang out with friends. . . [and] [h]e didn't have a close group of friends." Appellant claims this testimony was irrelevant under article 38.36 of the code of criminal procedure, that it was improper character evidence, and that it was more prejudicial than probative.

A trial court's decision to admit or exclude evidence is reversible only for an abuse of discretion. *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016). The court abuses it discretion when its decision falls outside the zone of reasonable disagreement. *Id*. at 83.

Article 38.36(a) states:

> In all prosecutions for murder, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense.

TEX. CODE CRIM. PROC. ANN. art 38.36(a). Evidence under article 38.36 must still meet the admissibility requirements of the Texas Rules of Evidence. *See Ruffin v. State*, 270 S.W.3d 586, 595–96 (Tex. Crim. App. 2008); *Garcia v. State*, 201 S.W.3d 695, 702 (Tex. Crim. App. 2006); *Jackson v. State*, 160 S.W.3d 568, 574 (Tex. Crim. App. 2005).

The law favors the admission of all logically relevant evidence for the jury's consideration. *Henley*, 493 S.W.3d 83. "Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id*.; *see also* TEX. R. EVID. 401. In other words, evidence is relevant if it influences the resolution of some matter at issue in the case. *Henley*, 493 S.W.3d at 83.

Under rule of evidence 404(b)(1), "[e]vidence of a crime, wrong, or other act is not

admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Exceptions to the rule include admission of the evidence "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." TEX. R. EVID. 404(b)(2). It may also be offered to rebut a defensive theory. *Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003).

The complained-of testimony occurred during the following exchange on direct examination:

> [STATE]: How would you describe [appellant] as far as—did he hang out with a lot [of] people? Was he personable? What would be your description?
>
> [DEFENSE]: Excuse me, Your Honor. I would object to that question, it's not relevant.
>
> [COURT]: [Prosecutor]?
>
> [STATE]: Judge[,] it's 38.36.
>
> [COURT]: Objection is overruled.
>
> [STATE]: How would you describe him?
>
> [SYDNEY]: Um . . . I describe [appellant] as a normal kid, you know, he did normal kid things, he had like activities he would like to do. Um . . . *he had some friends*, [emphasis added] and he was able to talk to people, you know. I mean, he wasn't like one of those people that are like shy, you know, he would open up and like conversations that people were having and—
>
> [STATE]: Was he—at the time right before the murders—was he having problems with not being able to hang out with friends, or did he express any of that of wanting to go places?
>
> [DEFENSE]: Excuse me, your Honor, the characterization of the question, I will object to.
>
> [COURT]: That objection is overruled.
>
> [STATE]: You can answer.
>
> [SYDNEY]: Oh, can you repeat that?
>
> [STATE]: Right before the—during the time before the murders, was he having any problems or was he complaining to you about not being able to hang out with

–5–

friends, or did he have friends that he was wanting to go hang out with, that there was some tension about that?

[SYDNEY]: Um . . . *he was able to play with friends or hang out with friends if he wanted to, but at that time he didn't—at least, he wouldn't go hang out with friends. He didn't have a close group of friends* [emphasis added].

Appellant's argues that evidence suggesting he was a "loner" was not permissible under article 38.36 because it had nothing to do with the relationship between the accused and deceased, nor did it show his state of mind at the time of the offenses. Instead, such evidence was merely character evidence offered to show he was "not normal," and that evidence was irrelevant to his guilt or innocence. In addition, it was "not more probative than prejudicial."

As the above exchange shows, however, not all of the complaints appellant is raising here were presented at trial. It is well-known that preservation of a complaint for appellate review requires a timely and specific trial objection. TEX. R. APP. P. 38.1(a)(1). The objection must also comport with the complaint raised on appeal. *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012). The record shows that appellant objected to the prosecutor's request for a description of appellant's personality as irrelevant, so his relevance complaint regarding Sydney's subsequent response that appellant "had some friends" is preserved. But appellant did not make a relevance objection when the prosecutor asked Sydney if appellant was upset before the murders because he was not able to "hang out with friends." Instead, he objected only to the "characterization of the question." Hence, appellant did not preserve his relevance complaint as to Sydney's response that appellant "didn't have a close group of friends."

Moreover, appellant did not object that any of the complained-of testimony constituted "improper character evidence" or that it violated rule 403. As a result, he failed to preserve either of those complaints as to any of Sydney's testimony. The sum total of appellant's argument on appeal regarding rule 403 is that Sydney's testimony should have been excluded because it was "not more probative than prejudicial." If it was appellant's intent to present a rule 403 complaint

–6–

on appeal, he inadequately briefed it. *See* TEX. R. APP. P. 38.1(h); *Gentry v. State*, Nos. 05–03–00706–CR & 05–03–00707–CR, 2003 WL 22994276, at \*1–2 (Tex. App.—Dallas Dec. 22, 2003, no pet.) (not designated for publication) (rule 403 complaint inadequately briefed where appellant made no specific argument and cited no authority to support his position).

Turning to the merits of appellant's complaint, Sydney testified that appellant was not shy, that he could converse with others, and that he "had some friends." But then he changed, and at the time of the murders he no longer had close friends that he socialized with. In addition, she testified that her parents had not limited appellant's access to his friends as punishment for his recent rebellious behavior. To the extent it showed appellant chose to retreat from his friends and isolate himself, Sydney's testimony was probative of appellant's state of mind at the time of the offenses. And to the extent it showed appellant's parents had not isolated him as punishment, it was also probative of appellant's relationship with his parents as well as the circumstances surrounding the murders. Therefore, regardless of whether all of appellant's relevance complaints are preserved, Sydney's testimony was relevant under article 38.36.

Furthermore, the State elicited Sydney's testimony in response to defense counsel's cross-examination about conflicts between appellant's parents and his brother Scott. Through his questioning of Scott, defense counsel tried to suggest appellant's parents may have been poor or unreasonable disciplinarians. Sydney's testimony denying that her parents prevented appellant from interacting with friends as punishment made this defensive theory less probable. Thus, even if we assume appellant's rule 404(b) complaint was preserved, Sydney's testimony also qualified for admission under rule 404(b).

As for rule 403, although Sydney testified that appellant did not have close friends and that he had isolated himself from others, this fact was, at most, mildly—and not unfairly—prejudicial. And it is highly unlikely that the jury convicted appellant solely because his sister described him

–7–

as someone who no longer had close friends to "hang out with." Accordingly, assuming for the sake of argument that appellant's rule 403 complaint was somehow preserved, exclusion of Sydney's testimony under rule 403 would have been unwarranted.

We conclude the trial court did not abuse its discretion in overruling appellant's objections. Additionally, even if we were to conclude the trial court erred in admitting Sydney's testimony, that error was harmless under rule 44.2(b) because, given the considerable evidence of appellant's guilt, the admission of the complained-of evidence did not have a substantial and injurious effect or influence on the jury's verdict and did not affect appellant's substantial rights. *See* TEX. R. APP. P. 44.2(b); *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *Motilla v. State*, 78 S.W.3d 352, 357 (Tex. Crim. App. 2002); *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). We overrule appellant's first issue.

## II. Crime Scene Photos

In his second issue, appellant argues the trial court abused its discretion and he was harmed when "numerous photographs" were allowed into evidence "specifically for their prejudicial purpose." Appellant's argument focuses on four photographs of his mother that were taken at the crime scene, i.e., State's exhibits 9, 13, 14, and 17.

Rule 403 allows for the exclusion of otherwise relevant evidence when its probative value is substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403; *Hernandez v. State*, 390 S.W.3d 310, 323 (Tex. Crim. App. 2012). Rule 403 favors the admission of relevant evidence and presumes that relevant evidence will be more probative than prejudicial. *See Henley*, 493 S.W.3d at 102; *Hernandez*, 390 S.W.3d at 323. A proper rule 403 analysis includes, but is not limited to, four factors: (1) the probative value of the evidence; the potential to impress the jury is some irrational yet indelible way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *See Henley*, 493 S.W.3d at 102. Also, under a proper rule 403

analysis, an appellate court considers whether there is any tendency of the evidence to confuse or distract the jury from the main issues as well as any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence. *See Henley*, 493 S.W.3d at 102 (discussing *Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006)).

All evidence against a defendant is, by its nature, designed to be prejudicial. *See Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013). Rule 403 does not exclude all prejudicial evidence, only evidence that is unfairly prejudicial. *See Henley*, 493 S.W.3d at 102; *State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005). "Unfair prejudice" refers only to relevant evidence's tendency to tempt the jury into reaching a decision on grounds apart from the proof presented in support of the claim. *See Henley*, 493 S.W.3d at 102; *Manning v. State*, 114 S.W.3d 922, 928 (Tex. Crim. App. 2003). If the evidence relates directly to elements of a particular claim, it may be prejudicial, but not unfairly so. *See Henley*, 493 S.W.3d at 102; *Manning*, 114 S.W.3d at 928.

A trial court's ruling on the admissibility of evidence is reviewed for an abuse of discretion. *Narvaiz v. State*, 840 S.W.2d 415, 429 (Tex. Crim. App. 1992). Generally, a photo is admissible if verbal testimony about the matters depicted in the photo is admissible. *Gallo v. State*, 239 S.W.3d 757, 762 (Tex. Crim. App. 2007). "In other words, if verbal testimony is relevant, photographs of the same are also relevant." *Id*. Images of the injuries a defendant inflicted on his victim are relevant to the jury's determination of material facts. *Id*. "The fact that the jury also heard testimony regarding the injuries depicted does not reduce the relevance of the visual depiction." *Id*.

The complained-of photos were taken by one of the responding officers, Corporal Evan Mattei of the Frisco Police Department, on his mobile phone shortly after arriving at the crime

scene.  The officer took six photos.  Five of those photos depicted the body of appellant's mother from various angles (State's exhibits 7, 9, 13, 14, and 17), and the sixth (State's exhibit 8) showed some shell casings on the mattress.  Defense counsel did not object to two of the photos, one of which (State's exhibit 7) showed the body from behind and at a distance; the other (State's exhibit 8) showed only the mattress and the shell casings.  He objected to the remaining four photos, State's exhibit 9, 13, 14, and 17.  The relevant portion of the record reads as follows:

> [STATE]:  We'd offer 7, 8, 9, 13, 14 and 17.

> (State Exhibit Nos. 7, 8, 9, 13, 14, 17 Offered)

> [DEFENSE COUNSEL]:  Seven and eight, Your Honor, I make no objections to the receipt of those items. To 17—that's a 14, 13, and 9, I make an objection that the probative value does not outweigh the prejudicial effect.  That they are—that's my objection, Your Honor.

> THE COURT:  Seven and eight were not obtained to, correct?

> A.  Correct.

> THE COURT:  Those are admitted.

> (State's Exhibit Nos. 7 and 8 Admitted)

> THE COURT:  Court will review the remainder.

> [DEFENSE COUNSEL]:  And then seven and eight depict what is necessary in the ones that I objected to, so they would be duplicitous.

> [STATE]:  And I believe be a lot more—her condition and what he described in the rest of them, and we offer them for prejudicial effect.  And we are not only going to publish them yet, Judge.

> THE COURT:  Nine, 13, 14, and 17 are admitted.

Appellant argues the photos should not have been admitted because they were not being offered for their probative value.  However, the trial court was not bound by the State's comments that the photos were being offered "for prejudicial effect," and there is nothing in the record to suggest those comments influenced the court's decision to admit the photos.  Absent an explicit refusal to conduct a rule 403 balancing test, we presume the court conducted a proper test when it

overruled the rule 403 objection. *See Williams v. State*, 958 S.W.2d 186, 195–96 (Tex. Crim. App. 1997); *Brooks v. State*, Nos. 05–16–00182–CR & 05–16–00183–CR, 2017 WL 4785331, at *11 (Tex. App.—Dallas Oct. 24, 2017, no pet.) (not designated for publication). And it is well-known that if a trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, it will not be disturbed on appeal. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

Regarding the merits of appellant's complaint, the evidence shows that when officers first arrived at the crime scene, Maria Callens was still breathing but her breaths were labored and "spaced far apart," according to Officer Mattei's testimony. As Mattei explained when he was describing Maria Callens's appearance after he first found her, she was in a "sort of fetal position with her knees somewhat curled under her." Knowing emergency medical personnel would soon arrive and move her, Officer Mattei testified that he took the photos to preserve evidence of how she appeared when she was found.

As for the photos themselves, they are not particularly graphic or gruesome. They show appellant's mother lying in bed on her right side, and she is partially covered by a comforter and is clothed in underwear and a tank top. The record does not indicate the true size of the photos or whether they were taken in color or black and white, but as shown in the record, none of them are large or especially detailed. *See Narvaiz*, 840 S.W.2d at 429–30 (upholding admission of crime scene photos over rule 403 objection where photos merely depicted crime scene as found by police and photos were neither large nor especially detailed). State's exhibit 9, for example, appears to have been taken from several feet away; it is dark and shows mostly Maria Callens's legs and the lower half of her body. State's exhibit 13, also taken from several feet away, shows her lying in bed or her right side. The photo is out of focus and somewhat fuzzy in appearance. State's exhibit 14, which was taken from a closer range, shows Maria Callens's head, including a bruise on her left cheek, and two gunshot wounds and a fracture to her left arm; this photo is also slightly out of

focus. State's exhibit 17 is clearer but was taken from virtually the same angle and distance. Not all of the gunshot wounds are visible in the photos either because of the distance or the position from which they were taken, or because the wounds are concealed by the comforter. The most graphic injuries shown are the bruise on Maria Callens's left cheek and the wounds to her left arm in State's exhibits 14 and 17, but not much blood can be seen in any of the photos, and no internal tissues or bones are visible.

The subject matter of the photos may be disturbing or unsettling, but they merely depict the crime scene as it was originally found by the police. *See id*. at 430 ("Although a crime scene may be gruesome, 'that fact alone will not [necessarily] render the probative value of [photographic] exhibits [of the crime scene] substantially outweighed by any prejudicial effect.'") (quoting *Long v. State*, 823 S.W.2d 259, 273 (Tex. Crim. App. 1991)). Had the four photos been excluded, there would have been only one photo of the body as it appeared when officers first arrived. That photo, State's exhibit 7, was taken from behind and from farther away than the other photos, and it provided the least amount of information regarding how the body appeared when the officers first arrived.

It should also be noted that the complained-of photos are far from the most graphic or gruesome evidence admitted at trial. The evidence included a 49 minute crime scene video that showed, among other things, Ryan Callens as he was found by the police, and Maria Callens after her body had been moved on the bed (State's exhibit 126). The video includes close-up visuals, in color, of both bodies, and their graphic injuries are fully visible. The video was admitted without objection. In addition, the bruise to Maria Callens's left cheek that is visible in State's exhibits 14 and 17 is even more apparent, from close up, in the crime scene video. And as we have already noted, the evidence of appellant's guilt is overwhelming. Thus, even if we were to assume the trial court erred in admitting the complained-of evidence, that error was harmless given the other

evidence in the record. *See* TEX. R. APP. P. 44.2(b); *Solomon*, 49 S.W.3d at 365; *Motilla*, 78 S.W.3d at 357; *Morales*, 32 S.W.3d at 867.

We conclude the trial court did not abuse its discretion in overruling appellant's objection. We overrule appellant's second issue.

We affirm the trial court's judgment.

/Lana Myers/
LANA MYERS
JUSTICE

Do Not Publish
TEX. R. APP. 47.2(b).
161180F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ZACHARY ELLIOT CALLENS,
Appellant

No. 05-16-01180-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 219th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 219-82261-2015.
Opinion delivered by Justice Myers.
Justices Lang and Stoddart participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 19th day of July, 2018.



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

ZACHARY ELLIOT CALLENS,
Appellant

No. 05-16-01181-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 219th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 219-82262-2015.
Opinion delivered by Justice Myers.
Justices Lang and Stoddart participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 19th day of July, 2018.