

**NUMBER 13-18-00350-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**BILLY JOE ROUSH,**                                                                  **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                                  **Appellee.**

---

**On appeal from the 424th District Court
of Llano County, Texas.**

---

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Hinojosa
Memorandum Opinion by Justice Longoria**

Appellant Billy Joe Roush was convicted on two counts of sexual assault of a child,

a second-degree felony. *See* TEX. PENAL CODE ANN. § 22.021. By four issues on appeal,

Roush argues that venue was not proper in Llano County (issue one), the trial court erred

by allowing the State to admit extraneous offense evidence (issues two and three), and

the trial court erred by admitting recordings from a certain police officer (issue four). We affirm.

## I. BACKGROUND[1]

J.R. and H.R. traveled with their three daughters from their home in Llano, Texas to Big Bend National Park in 2017. The daughters—C17-458, H.R.2, and V.R.[2]—were nine, eight, and five years old, respectively, at the time. Roush is the father of J.R. and the grandfather of C17-458, the child complainant. Roush also lives in Llano and accompanied them on their trip to Big Bend National Park. On the return trip home, J.R. and H.R. remained in the family's pickup truck for the entire duration; meanwhile, Roush rode in a camper being pulled by the pickup truck, and the three daughters took turns riding with Roush.

C17-458 testified that, while traveling between Alpine, Texas and Bakersfield, Texas, she rode in the camper with Roush while the rest of the family was in the truck. According to C17-458, while she was on a couch bed, Roush put his hand inside of her underwear and penetrated her "part" with two of his fingers. He then pulled down her underwear and touched her "part" with his tongue. C17-458 testified that her "part" is what she uses to go "number one." When the family stopped in Bakersfield to get gas and go to the bathroom, C17-458 rejoined her family in the truck and stayed there for the remainder of the trip. C17-458 did not tell her family of the alleged abuse at the time.

---

[1] This case is before this Court on transfer from the Third Court of Appeals in Austin pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001.

[2] To protect the minor complainant's identity, we will refer to the children, their parents, and other family members in this case using aliases. *See* TEX. R. APP. P. 9.8. We note that C17-458 is the pseudonym used by the State in the indictment to refer to the child complainant. Also, all instances of her names appearing the record have been replaced with "C17-458." Therefore, we will use this alias, as well.

About one month later, in April of 2017, H.R. became concerned that Roush was making inappropriate comments to H.R.'s younger sister, who was seventeen years old. H.R. and J.R. planned a family meeting to confront Roush. When J.R. told Roush that the family had concerns about his behavior towards H.R.'s sister, Roush became angry and left. After Roush left, C17-458 told her parents about the incident in the camper. J.R. and H.R. called the Llano County Sheriff's Office at that time.

Llano County Sheriff's Deputies Emil Wilcox and Jose Mesa responded to the call. However, because the family specifically requested a female officer, Laurie Brock—Chief of the Sunrise Beach Village Police Department—also responded. After speaking with the family, Wilcox, Mesa, and Brock decided to issue a criminal trespass warning to Roush to prevent him from returning to the family's home. Wilcox, Mesa, and Brock went to Roush's apartment to serve him with the warning. Brock recorded her conversation with Roush with her body camera; after the body camera died, she continued to record using her personal cell phone.

The next day, C17-458 met with Grace Yeager, a forensic interviewer at the Hill County Child Advocacy Center. C17-458 also met with Pamela Clark, a certified sexual assault nurse examiner.

At trial, the State called C17-458, J.R., Yeager, and Clark to testify. The State also called V.W., J.R.'s step-sister and Roush's step-daughter from a previous marriage. V.W. testified that Roush sexually abused her routinely over a ten-year period when they lived together, beginning approximately when she was five years old.

Count I alleged that Roush penetrated C17-458's sexual organ with his finger. Count II alleged that Roush caused C17-458's sexual organ to contact his mouth. Count

3

III alleged that Roush, with the intent of gratifying his sexual desire, engaged in sexual contact with C17-458 by touching her genitals. The jury found Roush guilty on Count I and Count II of sexual assault of a child; the State abandoned Count III.

During the punishment phase of trial, the jury heard testimony from T.W., Roush's ex-wife. She testified that later in their marriage, Roush pressured her into sleeping with other men for money. T.W.'s younger sister testified that Roush had fondled her and exposed his genitals to her when she was eleven.

On both Count I and Count II, the jury assessed punishment at life imprisonment in the Institutional Division of the Texas Department of Criminal Justice and a $10,000 fine. The trial court granted the State's motion to have the sentences run consecutively. Roush filed a motion for new trial, which was overruled by operation of law. This appeal ensued.

## II. VENUE

In his first issue, Roush argues that venue was improper in Llano County.

### A. Standard of Review and Applicable Law

On appeal, we presume that venue was proven unless it was disputed in the trial court or the record affirmatively shows the contrary. *See* TEX. R. APP. P. 44.2(c)(1); *Meraz v. State*, 415 S.W.3d 502, 506 (Tex. App.—San Antonio 2013, pet. ref'd). To sustain an allegation of venue, the State's only burden is to prove by a preponderance of the evidence that the county where the offense is prosecuted has venue. *See* TEX. CODE CRIM. PROC. ANN. art. 13.17; *Meraz*, 415 S.W.3d at 506. Venue can be proven by circumstantial as well as direct evidence. *See Dewalt v. State*, 307 S.W.3d 437, 457 (Tex. App.—Austin 2010, pet. ref'd). Venue will stand if the evidence is sufficient under any one

4

of the venue provisions on which the jury is instructed. *See id.* When reviewing whether the venue evidence is legally sufficient, we view all evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found by a preponderance of the evidence that venue was proper. *See id*.

Under the general venue provision, "[i]f venue is not specifically stated, the proper county for the prosecution of offenses is that in which the offense was committed." TEX. CODE CRIM. PROC. ANN. art. 13.18. However, there are several specific venue statutes that expand the counties within which an offense may be prosecuted under different circumstances. *See id.* arts. 13.01–.30. Relevant to the current case, article 13.19 states:

> [i]f an offense has been committed within the state and it cannot readily be determined within which county or counties the commission took place, trial may be held in the county in which the defendant resides, in the county in which he is apprehended, or in the county to which he is extradited.

*Id.* art. 13.19.

## B. Analysis

Roush argues on appeal that venue was improper in Llano County because "all criminal conduct was completed before the return trip to Llano County."[3] Alternatively, Roush argues that the evidence conclusively established that the alleged criminal conduct occurred solely within Pecos County because C17-458 testified that the alleged abuse concluded before reaching Bakersfield, Texas. The State argues that venue was proper in Llano County because it could not be readily determined whether the sexual assault occurred in Pecos or Brewster County. We agree with the State.

---

[3] Below, Roush filed a motion for directed verdict, asserting that the State failed to prove that venue was proper in Llano County. *See Thompson v. State*, 244 S.W.3d 357, 362 (Tex. App.—Tyler 2006, pet. dism'd) (holding that a motion for directed verdict specifically challenging the proof of venue timely raises and preserves the issue for appeal).

Contrary to Roush's assertion, C17-458 never unequivocally stated that the assault occurred solely within Pecos County. C17-458 moved into the camper with Roush starting in Alpine, and she moved back to the truck in Bakersfield. Alpine is in Brewster County and Bakersfield is in Pecos County. However, C17-458 was uncertain where they were geographically when the assault occurred. C17-458 testified that the assault occurred either twenty-five or sixty minutes before the stop in Bakersfield, but she never affirmatively established where she was relative to the county boundary. Therefore, the jury could have reasonably concluded that the precise county in which the offense was committed could not readily be determined. *See* TEX. CODE CRIM. PROC. ANN. art. 13.18. Accordingly, the jury could have found by a preponderance of the evidence that venue was proper in Llano County because that is the county in which Roush resides. *See id.*

Moreover, assuming without deciding that the venue evidence was insufficient, the State's failure to prove venue does not negate the guilt of the accused. *Meraz*, 415 S.W.3d at 506. Venue is non-constitutional error, and as such, is subject to the harm analysis of Texas Rules of Appellate Procedure Rule 44.2(b). *See* TEX. R. APP. P. 44.2(b); *Schmutz v. State*, 440 S.W.3d 29, 35 (Tex. Crim. App. 2014). Non-constitutional error requires reversal only if it affects the substantial rights of the accused. *See* TEX. R. APP. P. 44.2(b); *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *Thomas v. State*, 505 S.W.3d 916, 926 (Tex. Crim. App. 2016) (quoting *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997)). A reviewing court will not overturn a criminal conviction for non-constitutional error if, after examining the record as a whole, it has fair assurance the error did not influence the jury, or

6

influenced the jury only slightly. *Gonzalez*, 544 S.W.3d at 373. Roush argues that a Llano County jury might be more biased against him, but he never raised any objections or challenged any jurors on the basis of prejudice or bias. Therefore, even if venue was improper in Llano County, we cannot conclude that the choice of venue was reversible error.

We overrule Roush's first issue.

### III. EXTRANEOUS OFFENSE EVIDENCE

In his second and third issues, Roush complains about the trial court's admission of extraneous offense evidence. More specifically, in issue two, Roush argues that the trial court erred by: (1) allowing the State to discuss V.W.'s testimony concerning extraneous offense evidence during its opening statement; (2) ruling on the admissibility of this evidence during a pre-trial hearing, before the State's necessity for such evidence could be "adequately determined." In issue three, Roush argues that the trial court erred by failing to apply a "Rule 403 analysis of any kind on the record to avail itself of the discretion that the Rule envisions."

**A. The Article 38.37 Hearing**

**1. Standard of Review & Applicable Law**

We review the admission of extraneous offense evidence for an abuse of discretion. *See De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). "As long as the trial court's ruling is within the 'zone of reasonable disagreement,' there is no abuse of discretion, and the trial court's ruling will be upheld." *Id*. at 344.

Generally, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in

7

accordance with the character." TEX. R. EVID. 404(b)(1). However, when the defendant is tried for committing a sexual offense against a child that is under the age of seventeen, the State may introduce evidence, notwithstanding Rules 404 and 405 of the Texas Rules of Evidence, that the defendant has committed separate sexual offenses against other children "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b). To introduce such evidence, the trial court must first hold a hearing outside the presence of the jury and find that the evidence in question will adequately support a jury finding beyond a reasonable doubt that the defendant committed the separate offense. *Id.* § 2-a.

Even though article 38.37 evidence may be admitted notwithstanding Rules 404 and 405, such evidence is still subject to Rule 403's balancing test. *See Fahrni v. State*, 473 S.W.3d 486, 492 (Tex. App.—Texarkana 2015, pet. ref'd). Thus, such evidence may be excluded if its probative value is substantially outweighed by the danger of "unfair prejudice, confusing of the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403.

**2. Analysis**

Roush argues in his second issue that the trial court erred by holding the article 38.37 hearing before trial, before the court could properly assess the State's need for such evidence. However, the trial court's only duty during an article 38.37 hearing is to determine whether the proposed evidence would be adequate to support the jury's finding that the defendant committed the alleged separate sexual offense beyond a reasonable doubt. TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2-a. Article 38.37 does not require the

8

hearing to be held at any particular time, and it does not explicitly require the court to determine whether the State had a "need" for the evidence. *See id.*

The trial court conducted an article 38.37 hearing, during which the State called V.W. She testified that Roush, her stepfather, sexually abused her on a regular basis, starting around 1990 when she was about five and ending when she was about fifteen or sixteen. She testified that when she was five and her family lived in Polk County, Roush put his hands down her pants and touched her vagina. Between 1994 and 2002, after her family had moved to Madison County, V.W. testified that Roush touched her breasts and vagina on many different occasions and that it eventually progressed to having oral sex and vaginal sex on many occasions. V.W. also testified that Roush kissed her on the mouth using his tongue on multiple occasions. V.W. also testified that sometimes the sexual assault occurred when other family members were home. According to V.W., Roush told her not to tell anyone else about their sexual contact; on one specific occasion, Roush grabbed her by the neck and threatened to kill her if she told anyone else about the sexual abuse.

Roush argued that the evidence of Roush touching V.W. in Polk County and Madison County should be excluded under Rule 403 because of the "lack of evidence" and due to the passage of time. The trial court determined that a rational jury could find beyond a reasonable doubt that Roush had committed the alleged sexual offenses against V.W. in those counties. This determination is within the zone of reasonable disagreement, and thus we cannot conclude that the trial court abused its discretion in making this determination. *See De La Paz*, 279 S.W.3d at 344. Furthermore, Roush cites

9

no authority for his assertion that it was error for the State to discuss the extraneous offense evidence during opening statement. *See* TEX. R. APP. P. 38.1(i).

We overrule Roush's second issue.

## B. Rule 403 Analysis

### 1. Standard of Review & Applicable Law

"Whether evidence is admissible under Rule 403 is within the sound discretion of the trial court." *Burke v. State*, 371 S.W.3d 252, 257 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). Thus, on review of a Rule 403 analysis, a reviewing court will rarely reverse the trial court's judgment, and only after a clear abuse of discretion, because the trial court is in a superior position to gauge the impact of the relevant evidence. *See Freeman v. State*, 230 S.W.3d 392, 404–05 (Tex. App.—Eastland 2007, pet. ref'd).

A Rule 403 analysis "favors admissibility of relevant evidence, and the presumption is that relevant evidence will be more probative than prejudicial." *Booker v. State*, 103 S.W.3d 521, 533 (Tex. App.—Fort Worth 2003, pet. ref'd). When extraneous offense evidence is offered, the trial court should consider the following in its Rule 403 analysis:

(1) how compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable—a factor which is related to the strength of the evidence presented by the proponent to show the defendant in fact committed the extraneous offense;

(2) the potential the other offense evidence has to impress the jury "in some irrational but nevertheless indelible way";

(3) the time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense; and

(4) the force of the proponent's need for this evidence to prove a fact of consequence, i.e., does the proponent have other probative evidence available to him to help establish this fact, and is this fact related to an issue in dispute.

*Manning v. State*, 114 S.W.3d 922, 926 (Tex. Crim. App. 2003).

Once a Rule 403 objection is asserted, the trial court must engage in the balancing test required by that rule. *Williams v. State*, 958 S.W.2d 186, 195 (Tex. Crim. App. 1997). "However, a trial judge is not required to sua sponte place any findings he makes or conclusions he draws when engaging in this test into the record." *Id.* Rather, a judge is presumed to engage in the required balancing test once Rule 403 is invoked, and the trial court's failure to conduct the balancing test on the record does not imply otherwise. *See id.* at 195-96; *see also Simmang v. State*, No. 03-11-00455-CR, 2013 WL 5272919, at *7 n.17 (Tex. App.—Austin Sept. 11, 2013, pet. ref'd) (mem. op., not designated for publication) ("[T]he trial court is not required to perform the Rule 403 balancing test on the record, and when the record is silent, appellate courts must presume that the trial court performed the required balancing test.").

### 2. Analysis

In his third issue, Roush argues that the trial court failed to hold a Rule 403 analysis on the record in its determination to admit the extraneous offense evidence. However, as noted above, it is unnecessary for a trial court to hold a Rule 403 analysis on the record; we presume the trial court engaged in the proper analysis once Rule 403 was invoked. *See Williams*, 958 S.W.2d at 195.

Roush additionally argues that under a Rule 403 analysis, the extraneous offense evidence introduced through V.W. should have been excluded. Therefore, we will address the Rule 403 factors.

### a. First Factor

The first factor in a Rule 403 analysis is to evaluate the evidence's probative value. *See Manning*, 114 S.W.3d at 926. Evidence of a defendant's prior sexual assault against children is especially probative of the defendant's propensity to sexually assault children, and thus, "the Rule 403 balancing test normally will not favor the exclusion of evidence of the defendant's prior sexual assaults of children." *Alvarez v. State*, 491 S.W.3d 362, 371 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd).

In the present case, the extraneous offense evidence is particularly probative. Not only does it show Roush's propensity to sexually assault children, it also corroborates C17-458's testimony because the sexual offenses committed against V.W. were similar in several ways to the offenses committed against C17-458. Roush was related to both V.W. and C17-458. The offenses against both of them began when they were young children. Roush first engaged in sexual contact with both of them by putting his hand down their pants. Roush inappropriately kissed both children using his tongue. Lastly, Roush engaged in sexual contact with both children when other family members were in the vicinity. This factor weighs in favor of admitting the evidence.

### b. Second Factor

In the second factor, a court analyzes the potential of the extraneous offense evidence to impress the jury in some irrational way. *See Manning*, 114 S.W.3d at 926. Roush admits that V.W.'s testimony is relevant but argues that her testimony was substantially prejudicial because it "tended to impress upon the jury a need for a moral or emotional conclusion rather than a reasoned decision." Thus, according to Roush, V.W.'s testimony should have been limited to the punishment phase of trial or the trial court

12

should have limited V.W.'s testimony to a "brief summary of the sexual exploitation." However, this is the exact type of evidence Article 38.37 permits. *See* Tᴇx. Cᴏᴅᴇ Cʀɪᴍ. Pʀᴏᴄ. Aɴɴ. art. 38.37. V.W.'s testimony had no more potential to influence the jury in an irrational way than other testimony of this nature. Furthermore, the State could not simply give a brief summary of the sexual exploitation because the State bore the burden of showing that a rational jury could find beyond a reasonable doubt that Roush committed the sexual offenses against V.W. *See id.* Therefore, this factor favors admission.

### c. Third Factor

Under the third factor, the court analyzes the time the State would need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense. *See Manning*, 114 S.W.3d at 926. Roush cites no authority to demonstrate that the length of time the State needed to establish V.W.'s testimony was likely to distract the jury from consideration of the indicted offense committed against C17-458. By looking at the Reporter's Record, we note that the State's case-in-chief is roughly 240 pages in length; of those 240 pages, V.W.'s testimony consumes only thirty-eight pages. Thus, given the relatively short amount of time the State needed to develop V.W.'s testimony compared to the large amount of time the State spent on the indicted offense itself, this factor weighs in favor of admission.

### d. Fourth Factor

The fourth factor is the proponent's need for the evidence. *See Manning*, 114 S.W.3d at 926. Roush argues that the State's need for the extraneous offense evidence was low because "[i]n essence, [he] never contested the evidence or the allegations brought by [C17-458]." It is true that Roush never testified at the trial and did not directly

13

contest the allegations of sexual abuse, but Roush still cross-examined C17-458 to call into question her reliability and credibility. Also, we observe that the State's only evidence in this case that Roush committed the alleged offense is the testimony of C17-458, an eleven-year-old girl. There is no other direct evidence in this case, and there is no physical evidence. Because C17-458 did not make an outcry until one month after the alleged offense, Clark testified that she did not see any physical trauma and she did not collect any swabs. Nobody else witnessed the offense, either. It is true that the testimony of a child sexual abuse victim alone is sufficient to support a conviction for indecency with a child or aggravated sexual assault. TEX. CODE CRIM. PROC. ANN. art. 38.07; *see Gonzalez Soto v. State*, 267 S.W.3d 327, 332 (Tex. App.—Corpus Christi–Edinburg 2008, no pet.). However, given the nature of sexual assault cases, the age of the victim, and the lack of physical evidence, we conclude this factor also weighs in favor of admission.

In summary, we cannot conclude that the trial court abused its discretion in its Rule 403 analysis. We overrule Roush's third issue.

## IV. ADMISSION OF EVIDENCE

In his fourth issue, Roush asserts that the trial court erred in admitting video recordings made by Brock. More specifically, because Brock is the police chief of Sunrise Beach Village, Roush argues that she was outside of her jurisdiction when she met with Roush and recorded him in Llano. As such, Roush argues that Brock was not permitted to participate in the interview of Roush, and the evidence of such interview should be excluded.

In order to preserve a challenge to the trial court's admission of evidence, the complaining party must have lodged a timely and specific objection and have obtained an

14

adverse ruling. *See* TEX. R. APP. P. 33.1(a); TEX. R. EVID. 103. Roush made no objections to the trial court when Brock's recordings were admitted and Roush did not object to Brock's testimony. Therefore, Roush has failed to preserve this issue for appeal. *See* TEX. R. APP. P. 33.1(a); TEX. R. EVID. 103.

However, even if Roush properly preserved this issue for appeal, he has not shown any reversible error in the admission of Brock's recordings. *See* TEX. R. APP. P. 44.2. As noted above, non-constitutional error requires reversal only if it affects the substantial rights of the accused. *See* TEX. R. APP. P. 44.2(b); *Gonzalez*, 544 S.W.3d at 373. A non-constitutional error affects the substantial rights of the accused if it had a substantial and injurious effect or influence in determining the verdict. *See Bell v. State*, 566 S.W.3d 398, 408 (Tex. App.—Houston [14th Dist.] 2018, no pet.). The video recording offered relatively little probative value compared to other testimony admitted during trial. We cannot conclude that Brock's video recordings had a substantial or injurious effect in determining the verdict. *See id.*

We overrule Roush's fourth issue.

### V. CONCLUSION

We affirm the trial court's judgment.

NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
23rd day of April, 2020.

15